BRIGHAM STOWELL, AND OTHERS, RESPONDENTS, *v.* JOSEPH T. JOHNSON, AND OTHERS, APPELLANTS.

WATERS.—IRRIGATION.—APPROPRIATION.—USEFUL PURPOSE.—In a suit, concerning the waters of a certain stream, where it was found that the defendants had appropriated all the waters of a stream for the irrigation of their lands, which was a necessary and beneficial use thereof, dating from the year 1848, and so continued to appropriate and use said waters during each and every part of each and every year thereafter, to the interruption thereof by the plaintiffs, and in 1882 the plaintiffs diverted part of the waters of the tributaries of the stream during the winter season and continued so to divert it for a useful purpose until 1888, but when the court did not find that the defendants needed, during the winter season, the water diverted by the plaintiffs; *held*, that a decree that the plaintiffs were entitled to the water diverted by them, during the winter season, was not contrary to the findings.

ID.—RIPARIAN RIGHTS.—PRIOR APPROPRIATION.—In this Territory the doctrine of riparian rights has never been recognized, and a statute of the Territorial legislature ignoring the right of a riparian proprietor at common law to have the water in a stream flow in quantity and quality as it was wont to do when he acquired title, is valid.

·APPEAL from a decree of the district court of the first district.

The appeal was from the judgment roll, consisting of the complaint, answer, findings and decree. The complaint was filed July 17, 1888, and alleged the ownership in the plaintiffs of certain real estate, and a diversion of the waters of Waterfall canyon creek, and one-half the waters of Strong's canyon creek, made more than ten years before the beginning of the suit, for the purpose of irrigating the said lands and of supplying Ogden City with water, and a continuous use of said waters after said diversion and appropriation to the beginning of the suit and an interference since June 1st, 1888, by the defendants with the plaintiffs' use of said water, and prayed a perpetual injunction against the defendants from interfering with said use of all the waters of Waterfall canyon creek and one-half of the waters of Strong's canyon creek.

The answer of the defendants, after denying plaintiffs' appropriation, alleged that the two streams named in the complaint united lower down to form Canfield creek, and that the defendants were the owners of certain lands lying along Canfield creek, and while the plaintiffs' lands were unoccupied, unimproved, and unclaimed lands of the United States, appropriated for the irrigation of their lands and for domestic purposes all the waters of Canfield creek; that during a portion of every season there was a surplus of water, and that certain of the defendants had the right to use such surplus water during a portion of the year, and that the present season was exceptionally dry and there was no surplus of water.

The findings of the court were as follows: That the plaintiffs were the owners of certain lands, and that the defendants were and had been the owners in fee of certain lands, since prior to the year 1880, and that all of said lands were agriculturally used, but were arid

without irrigation; that the two streams, Waterfall canyon creek and Strong's canyon creek, rise in the mountains and run westerly, and form a junction making Canfield creek, which junction is east and north of the lands of the defendants, and west and south of the lands of the plaintiffs, and that said Canfield creek, at all the times mentioned in the complaint and answer, has flowed across and over the lands of the defendants, and that said streams were the only sources of supply for both plaintiffs and defendants; "that the several defendants in this action, and their grantors and predecessors in interest, and while the several pieces or parcels of land described in the complaint as owned in severalty by the plaintiffs were unoccupied, unimproved, uncultivated, and unclaimed lands of the United States, to-wit: in the year 1848, by means of dams placed in and across the channel of said Canfield creek, below and west of the junction of the two streams aforesaid, and also in and across the channel of said Strong's canyon creek, above and east of the junction of the two aforesaid streams, and also by means of ditches and canals tapping the said Canfield creek and the said Strong's canyon creek at various places, and leading therefrom, diverted, conveyed, and appropriated to and upon the several pieces of land, so owned by the defendants and their grantors and predecessors in interest, for the irrigation of said lands of the defendants and for domestic purposes, all of the waters of said Canfield creek, which said last named creek was then, and ever since has been and now is, composed of the waters from said Waterfall canyon creek and said Strong's canyon creek, which said use aforesaid, was a necessary and beneficial use thereof; that said use, diversion and appropriation by the defendants, and their grantors and predecessors in interest, of all the waters of said Canfield creek, was so made fully and completely, during each and every

part of each and every year, while the several pieces or parcels of land now owned by the several plaintiffs herein were uncultivated, unimproved, unclaimed and unoccupied lands of the United States; and the several defendants and their grantors and predecessors in interest, did so use during each and every part of each and every of said years, and until the interruptions in said use hereinafter named, all the waters of said Canfield creek and of the two said tributaries thereof, except at a time or times in said years when there has been a large increase of the flow of said streams by reason of the melting of snow in the mountains at or near the source of said tributaries of said Canfield creek; that several years subsequent to the appropriation and use of the waters of said streams by the defendants, their grantors and predecessors in interest, as aforesaid, to-wit: about the year 1854, the predecessors in interest and grantors of the plaintiffs entered into possession of the lands described in the complaint and cultivated about ten acres thereof, by diverting and conducting and appropriating a portion of the waters of said Waterfall canyon creek and a portion of the waters of said Strong's canyon creek to and upon the said ten acres of land during the irrigation season; that subsequent to the year 1854, to-wit: about 1862, the grantors and predecessors in interest of the plaintiffs, and during the irrigation season of said year, used, diverted, and appropriated and conducted to and upon the lands described in the complaint for the irrigation thereof and for domestic purposes, thirty one-hundred-and-sixteenths (30-116) of the waters of said Strong's canyon creek and also thirty one-hundred-and-sixteenths (30-116) of the waters of said Waterfall canyon creek openly, peaceably and uninterruptedly, continuously and adversely to the defendants and their grantors and predecessors in interest; and ever since said

year 1862, and up to the time of the filing of the complaint in this action, the plaintiffs and their grantors and predecessors in interest have used and continue to use during the irrigation season of each and every of said years thirty one-hundred-and-sixteenths (30-116) of the waters of each of the streams aforesaid openly, peaceably, uninterruptedly, continuously and adversely, for the purposes aforesaid; that ever since the year 1862 and up to the time of the filing of the complaint in this action and during the irrigation season of each and every year since the time the defendants and their grantors and predecessors in interest have diverted, appropriated, used and conducted to and upon their said lands for the irrigation thereof, and for domestic purposes, by means of the dams and ditches aforesaid, eighty-six one-hundred-and-sixteenths (86-116) of the waters of said Waterfall canyon creek and also eighty-six one-hundred-sixteenths (86-116) of the waters of said Strong's canyon creek; that the irrigation season begins on the 1st day of April of each and every year and terminates on the 1st of November of each and every year, and when said term is used in these findings it includes the period of each and every year between the two dates last aforesaid; that between the 1st day of November, 1882, and the 1st day of April, 1883, by means of certain pipes laid from said Strong's canyon creek and from said Waterfall canyon creek, by the Ogden Water Company, and tapping the two said streams above their junction, the plaintiffs diverted one-half ($\frac{1}{2}$) of the waters of Strong's canyon creek and all of the Waterfall canyon creek and conducted the said portions of the said two streams through the pipes aforesaid between the two dates last aforesaid, to-wit: between the 1st day of November, 1882, and the 1st day of April, 1883, to Ogden City for the purpose of furnishing the

inhabitants thereof with water; and between the two last dates aforesaid, to-wit, from the 1st day of November, during each and every year since said year 1882 until the 1st day of April of the following year, the plaintiffs and their predecessors in interest have, by means of the pipes aforesaid diverted all of the waters of said Waterfall canyon creek and one-half ($\frac{1}{2}$) of the waters of said Strong's canyon creek, and have conducted the same through. the said pipes through said winter season of each and every year since 1882, to Ogden City for the purpose of furnishing the inhabitants thereof with water; that since the laying of the aforesaid pipes in the month of November, 1882, by the said Ogden Water Company, and the diversion of the waters aforesaid through said pipes by the plaintiffs during the winter season the defendants and their grantors and predecessors in interest have diverted and used for domestic purposes and for watering live stock between the 1st day of November and the 1st day of April of each and every winter season since the winter season of 1882-3, one-half of the waters of said Strong's canyon creek and all the waters of Canfield creek below the junction of said tributaries thereof.

The decree adjudged to the plaintiffs thirty one-hundred-and-sixteenths (30-116) of Waterfall canyon creek and the same amount of Strong's canyon creek during the irrigation season and all the waters of Waterfall canyon creek and one-half ($\frac{1}{2}$) of the waters of Strong's canyon creek during the winter season, and to the defendants eighty-six one-hundred-and-sixteenths (86-116) each of Waterfall canyon creek and Strong's canyon creek and all the flow of Canfield creek below the junction during the irrigation season, and one-half ($\frac{1}{2}$) of the waters of Strong's canyon creek and all the flow of Canfield creek below the junction during the winter season.

*The date of the acquisition of said title from the United States by the defendants appears nowhere in the findings, except that it was prior to the year 1880.*

The statute of Utah Territory is as follows: "A right to the use of water for any useful purpose  *    *    *  is hereby recognized and acknowledged to have vested and accrued as a primary right to the extent of and *reasonable necessity* for such use thereof, under any of the following circumstances:

"1. Whenever any person or persons shall have taken, diverted, and used any of the unappropriated water of any natural stream, water-course, lake or spring, or other natural source of supply.

"2. Whenever any person or persons shall have had the open, peaceable, uninterrupted and continuous use of water for a period of seven years.

"A secondary right to the use of water for any of said purposes is hereby recognized and acknowledged to have acted and accrued (subject to the perfect and complete use of all primary rights), to the extent of and reasonable necessity for such use thereof, under any of the following circumstances:

"1. Whenever the whole of the waters of any natural stream, water course, lake, spring, or other natural source of supply has been taken, diverted and used by prior appropriators for a part or parts of each year only; and other persons have subsequently appropriated any part, or the whole of such water during any other part of such year such person shall be deemed to have acquired a secondary right.

"2. Whenever at the time of an unusual increase of water, exceeding seven years average flow of such water at the same season of each year, all the water of such average flow then being used by prior appropriators, and other persons appropriate and use such increase of water.

such persons shall be deemed to have acquired a secondary right." Sections 2780 and 2781, 2 Comp. Laws of 1888, 134. This statute was passed February 20, 1880.

*Mr. E. M. Allison, Jr.*, and *Messrs. Smith and Smith*, for the appellants.

The winter appropriation was begun in 1882, and this suit was begun in 1888. And up to this interruption the court finds that the defendants had appropriated all the water since 1848, and therefore this appropriation during the winter by plaintiffs not having become a right by adverse user for seven years, it is clearly contrary to the findings to decree this water during the winter season to the defendants.

The court finds that in 1880, prior to this winter appropriation, the plaintiffs were the owners in fee of their lands over which runs Canfield creek. The winter appropriation was begun two years later. But the grantees of the United States had before that time acquired, as a vested right, all the estate that the United States had, and no statute of the Territory could divest it. Pomeroy Riparian Rights, 90, note 1; *Evans* v. *Roes*, 8 Pac. Rep. 88; *Dodge* v. *Worden*, 7 Oregon, 456; *Lux* v. *Haggin*, 10 Pac. Rep. 674; *Sturr* v. *Beck*, 133 U. S. 541.

*Messrs. Kimball and White*, and *Mr. L. R. Rogers*, for the respondent.

BLACKBURN, J.:

The appeal in this case is taken for the purpose of modifying the decree made in the first district court, and the claim to have the decree modified is based upon the findings of facts made by the court (the evidence not being in the record) and the common law doctrine of riparian rights. The parts of the decree complained of

are as follows: "That the plaintiffs are the owners of the right to use all the waters of said Waterfall canyon creek and one-half of the waters of said Strong's canyon creek during the winter season, to-wit, between the 15th day of November and the 15th, day of the following April of each and every winter season, for domestic purposes, and for the purpose of furnishing the inhabitants of Ogden City with water, and the enjoining of defendants from interfering with such use." The findings of facts by the court, so far as the questions made are concerned, are substantially as follows:

"That the plaintiffs are the owners of certain lands described in the complaint; that the defendants are the owners in fee of distinct parcels of land lying west of the lands of the plaintiffs; that they have been such owners since and prior to the year 1880; that defendants' lands are cultivated, and all of the lands of both plaintiffs and defendants require irrigation. (3) Waterfall canyon creek and Strong's canyon creek rise in the mountains east of the lands of plaintiffs, and flow across the lands of the plaintiffs, making a junction about the west line of plaintiffs' lands, and after the junction the stream is called and known as 'Canfield creek,' and that this Canfield creek flows westerly in its natural channel across the lands of defendants. (4) That these streams are the only sources of water available for the irrigation of the lands of plaintiffs and defendants. (5) That the several defendants in this action, and their grantors and predecessors in interest, and while the several pieces and parcels of land described in the complaint as owned in severalty by the plaintiffs, were unoccupied, unimproved, uncultivated, and unclaimed lands of the United States, to-wit, in the year 1848, by means of dams placed in and across the channel of Canfield creek below and west of the two

streams, and also in and across the channel of Strong's canyon creek, above and east of the junction of the aforesaid streams, and also by means of ditches and canals tapping the said Strong's canyon creek at various places, and leading therefrom, conveyed and appropriated to, in, and upon the several pieces of land so owned by the defendants, their grantors and predecessors in interest, for the irrigation of the said lands of the said defendants, and for domestic purposes, all of the waters of said Canfield creek, which creek was then, and ever since has been, and now is, composed of the waters of Waterfall canyon creek and Strong's canyon creek, which use aforesaid was a necessary and beneficial use thereof. (6) That use, diversion, and appropriation by the defendants and their grantors and predecessors in interest, of all of the waters of said Canfield creek was so made fully and completely during each and every part of each and every year, while the said pieces and parcels of land now owned by the several plaintiffs herein were unclaimed, unimproved, and unoccupied lands of the United States, and the several defendants, their grantors and predecessors in interest, did so use, during each and every part of each and every year, and until the interruption in said use hereinafter named, all of the waters of Canfield creek, and of the two said tributaries thereof, except," etc. "(10) The irrigating season is from the 1st of April until the 1st of November. (11) That between the 1st of November, 1882, and the 1st of April, 1883, the plaintiffs, by means of pipes laid for the purpose, diverted one-half of Strong's canyon creek, and all of the waters of Waterfall canyon creek, during the winter season, and up to the commencement of this suit, and have continued to so divert it, for the purpose of furnishing Ogden with water. (12) That the plaintiffs have ever since November, 1882, and up to the beginning of this suit, continued

to divert one-half of Strong's canyon creek, and all of the waters of Canfield creek below the junction."

We think the findings of fact support that part of the decree complained of. It is not found that the defendants need on their lands water for irrigation during the winter season, but the finding is that the irrigating season is from April to November. Nor is it found that the defendants need during the winter season more water than one-half of the waters of Strong's canyon creek and all of the waters of Canfield creek below the junction. On the contrary, they seem to have got along with that amount of water from 1882 until this suit was commenced. Therefore this decree ought to be affirmed, unless the other contention of the defendants is the law of this Territory; that is, that the common-law doctrine of riparian rights is in force, and that when they, their grantors and predecessors in interest, purchased their land from the United States, the land above them was unoccupied, and the water unappropriated, and that they now are legally entitled to have the water flow as it was wont to flow when they, their grantors and predecessors in interest, purchased it, undiminished in quantity, and not deteriorated in quality.

Riparian rights have never been recognized in this Territory, or in any State or Territory where irrigation is necessary; for the appropriation of water for the purpose of irrigation is entirely and unavoidably in conflict with the common-law doctrine of riparian proprietorship. If that had been recognized and applied in this Territory, it would still be a desert; for a man owning ten acres of land on a stream of water capable of irrigating a thousand acres of land or more, near its mouth, could prevent the settlement of all the land above him. For at common law the riparian proprietor is entitled to have the water

flow in quantity and quality past his land as it was wont to do when he acquired title thereto, and this right is utterly irreconcilable with the use of water for irrigation. The legislature of this Territory has always ignored this claim of riparian proprietors, and the practice and usages of the inhabitants have never considered it applicable, and have never regarded it. So with Colorado, early in its history, by a decision of its highest court, it was set aside. *Yunker* v. *Nichols*, 1 Colo. 551.

But defendants contended that their right to have water flow in Canfield creek, as it was wont to when their grantors and predecessors in interest acquired title to the land, is a vested right, and is not a rightful subject of legislation. In this arid country, that must remain a desert without the use of water for irrigation, if anything is a rightful subject of legislation it is the ownership of the water, and use and appropriation of the waters of the running streams for irrigation and domestic use. In support of their contention, the defendants cite *Sturr* v. *Beck*, 133 U. S. 541, 10 Sup. Ct. Rep. 350. That decision was made in an appeal from the Supreme Court of the Territory of Dakota, where the statutes and climatic conditions are very different from those in this Territory. The full force and pith of the opinion is founded in its concluding paragraph: "Thus under the laws of congress and the Territory, and the applicable custom, priority of possession gives priority of right. The question is not as to the extent of Smith's interest in the homestead, as against the government, but whether, as against Sturr, his lawful occupancy, under the settlement and entry, was not a prior appropriation which Sturr could not displace. We have no doubt it was under one of the statutes of Dakota upon which this decision is made, and it is as follows: 'Sec. 255, (Civil Code.)

The owner of land owns water standing therein, and flowing over or under its surface, but not forming a definite stream. Water running in a definite stream, formed by nature, over or under the surface, may be used by him as long as it remains there; but he may not prevent the natural flow of the stream, or of the natural spring from which it commences its definite course, nor pursue nor pollute the same.'" How unlike this statute is to the whole course of legislation in this Territory in reference to water-rights. Our views are supported by Pom. Rip. Rights, § 105. We think there is no error in this decree. Therefore the judgment is affirmed.

ZANE, C. J., ANDERSON, J., and MINER, J., concurred.