**303 P.2d 271**

**WEBER BASIN WATER CONSERVANCY DISTRICT, Plaintiff and Respondent,**

**v.**

**John R. GAILEY et al., Defendants,**

**Frank Bohman, Defendant and Appellant.**

**No. 8478.**

Supreme Court of Utah.

Nov. 7, 1956.

J. Lambert Gibson, James E. Faust, Salt Lake City, for appellant.

E. J. Skeen, Salt Lake City, for respondent.

McDONOUGH, Chief Justice.

The Weber River rises in the Uintah Mountains in northern Utah and flows into Great Salt Lake. The annual flood discharge from snow melt occurs in April, May and June, varying greatly from year to year, with a maximum flow of over 5,000 second feet. Most of the normal summer flow has been appropriated but the great part of the annual run-off still escapes into the Great Salt Lake, frequently flooding the valley farms in its course. The Weber Basin Project, Utah, was authorized by the Act of August 29, 1949, 63 Stat. 677, to control floods and conserve the water. By this Act, the Secretary of the Interior,

through the Bureau of Reclamation, was empowered to construct, operate, and maintain reservoirs, irrigation and drainage works, power plants, and transmission lines in the area. In order to make the project self-supporting and financially solvent, the Act provided that an organization within the State of Utah should be established, having the power to tax property within the boundaries of the district and the power to enter into contract with the United States for payment of reimbursable costs.

The Weber Basin Water Conservancy District was established in Utah in accordance with the Water Conservancy Act, Laws of Utah 1941, c. 99, U.C.A.1953, Title 73. In accordance with the powers of eminent domain granted it, the Weber Conservancy District commenced condemnation proceedings against the appellant, Frank Bohman, along with other defendants, to obtain land for the Gateway Canal, a concrete-lined diversion for water from the Weber River to a maximum of 700 second feet. Mr. Bohman received payment for the land actually taken for the construction of the canal, but the trial court refused to allow him to introduce evidence to show that other portions of his land, not taken by the District, would suffer as a result of the diversion. It is his contention that the spring floods supply his land with subirrigation and he asks that he be compensated for the expenditures which he will have to make in leveling his land and buying irrigation rights to fit his land for raising the crops he now raises without irrigation.

The trial judge limited the proof in this case strictly to the value of the land condemned because he felt that rights which appellant might have to subirrigation waters would not be lost because of the construction of the canal and if they were lost at a later date, the loss would occur by reason of dams and other diversionary projects higher up on the river. Some of these dams and projects are in the planning stage and, in fact, the money for their construction has not yet been appropriated. The canal itself is expected to carry water in the Spring of 1957.

The trial court made no findings as to appellant's rights to subirrigation waters and stated that he did not consider the matter litigated at this time. Appellant does not claim that he has the right to present proof of damage which might occur as a result of the operation of the entire project, but instead limits his appeal to his right to prove the injuries which will occur to him as a result of the operation of the canal.

Because of the trial court's ruling, most of the issues presented by the parties cannot be determined from the brief record before us nor are they ripe for appeal. In fact, all of the points raised by respondent are not in issue in view of appellant's assertion that he desires only to prove that valu-

able subterranean water upon his land will be taken by the operation of the Gateway Canal, the project for which this condemnation suit was commenced. We cannot here determine without evidence the nature of appellant's right, whether or not he will be damaged, or whether the damage he claims is remote and speculative. On the basis of the record before us, it appears that proving such damage will be difficult, but appellant merely asks the right to assume his burden of proof.

■ It is unnecessary to set forth here U.C.A.1953, 78–34–10, which allows for a hearing on, and compensation for, severance damages and damages which will occur by virtue of construction of the proposed improvement even though no part of the property is taken. As is stated in 3 Nichols on Eminent Domain, sec. 9.221:

"＊ ＊ ＊ It is well settled that when a public work is laid out through a tract of private land, the owner is entitled to receive, in addition to the value of the land taken, compensation for the injury that will be done to the remainder of the tract by the construction and operation of the public work."

The case is remanded to the lower court with directions to retain jurisdiction until the completion of the Gateway Canal and diversion of water thereby, and thereafter take evidence to determine the damage, if any, caused to appellant's land because of such diversion. Costs to appellant.

HENRIOD, J., concurs.

WADE, Justice (concurring).

■ I concur with the prevailing opinion. However, I agree with the dissenting opinion that under plaintiff's pleadings the court has full authority to determine in this action the question of the amount of damages which the defendant Bohman, appellant here, will sustain if and when the entire project is completed. This appeal, as pointed out in the prevailing opinion, seems to be limited to the right to prove damages which the appellant will sustain as the result of the operation of the canal, but if defendant so desires, I see no reason why he cannot enlarge his claim to recover such damages resulting from the operation of the entire project. Apparently appellant is satisfied to litigate his claim for damages resulting only from the operation of this canal.

The question to be determined is whether the defendant by his counterclaim states a claim upon which relief can be granted.[1] If it shows that this canal, when completed and placed in operation, will take or damage appellant's property for public use, then appellant is entitled to just compensation

1. See Utah Rules of Civil Procedure, Rule 12(b).

therefor.[2] In substance appellant alleges that under the natural conditions, without the operation of this canal, the flow of the Weber River has the effect of subirrigating some of his lands so that crops will mature thereon without the use of artificial irrigation and that with the operation of this canal the waters which supply this subirrigation will be diverted away from its natural channel and destroy the subirrigation of his lands and thereby make it necessary for appellant to level his lands and acquire an irrigation water right and use it for irrigating his lands thereafter. These allegations, although subject to dispute, are not so unreasonable that we can hold as a matter of law, without hearing his evidence, that they are untrue. If the allegations are true then it is clear that his property will be seriously damaged by the operation of this canal and under the constitution and statutory provisions he is entitled to recover such damages. I see no reason why he is not entitled to his damages under these alleged conditions just the same as he would be if he had established a water right to irrigate such lands by appropriation and beneficial use, which would be destroyed by the operation of this canal.

Appellant's claim for damages is not defeated by the fact that he did not acquire the right to subirrigate his land by appropriation, diversion and beneficial use, nor by the fact that this state does not recognize riparian rights. If he can establish that in the past he has received natural benefits from the subirrigation of his land, which the future operation of this canal will deprive him of, the damage to his property for a public use will thereby be established. Even the dissenting opinion, by implication, agrees that if his right to subirrigate his land has been acquired by diversion, appropriation and beneficial use he would be entitled to his damages. His property is nonetheless damaged if he is deprived of such subirrigation because of the fact that his right thereto resulted from natural causes. It is a strange contention that he can be deprived of this right of subirrigation which results from natural causes but cannot be deprived of such right if it has been established by his own efforts for the damage to his property would be the same in both cases. Neither our statutes nor constitutional provisions justify such a distinction. Such a doctrine would require the landowner with natural subirrigation of his land to drain his land and divert other water thereon in order to establish his right to subirrigate his land.

The contention in the dissenting opinion that recognition of this claim requires a holding that appellant is entitled to waste large quantities of water is incorrect. Appellant makes no claim that this project may not utilize all of this water, he merely

2. Art. I, Sec. 22, Utah Constitution says: "Private property shall not be taken or damaged for public use without just compensation."

claims that he is entitled to just compensation if the project deprives him of the beneficial use of the water which subirrigates his land. It is well established in this state that percolating waters, to the extent that they confer a benefit upon the land are a part of and belong to the owner of the soil and are not public waters of the state nor subject to appropriation.[3]

In Riordan v. Westwood,[4] we noted that this court has always recognized that percolating waters are not public waters but are a part of the ground through which they pass and belong to the owner thereof, with well-recognized exceptions to such rule none of which have a bearing on our problem in this case. We also noted that in recent years our concept of what are percolating waters has undergone great change. We pointed out that this is not a part of the riparian rights doctrine but to some extent is contrary thereto. We emphasized the importance of using all available water in the arid states and that the landowners should not be disturbed in a beneficial use of water on their lands whether such use results from an appropriation and diversion or from natural causes and held that water which subirrigates land through natural causes and thereby produces a beneficial result to the land by sustaining plant life is a part of the soil even under our changed conception of what constitutes percolating waters and is not subject to appropriation, saying:

"If such were not the case then there would be much meadow land and other lands that are so situated that they are naturally sub-irrigated through percolation from higher grounds which could be appropriated and drained and the waters carried onto the land of strangers even though the use of such waters on the lands in accordance with their natural course would be much more beneficial and economical than it would be if diverted from their natural course onto the lands of others. If such waters are public waters and subject to appropriation then it would be impossible for the owner of the land on which they appear to make the appropriation for use on his lands in their natural state because such use does not require an artificial diversion or use which is required in order to obtain the right to the use of waters by appropriation. It would also mean that every land owner who has a naturally wet place on his land would have to make application to appropriate such waters and unnecessarily divert the water from its natural course in order to preserve his right to the use thereof even though it would be more economical and beneficial to

3. See the lengthy discussion of this question in Riordan v. Westwood, Utah, 203 P.2d 922, 924–929.

4. See note 3 above.

allow it to proceed in accordance with nature."

In the Riordan case we relied on Adams v. Portage Irr.,[5] which held that the owner of land on which a spring arose had a right to continue to water his livestock and to satisfy his domestic use for sheep camps from such spring although he had made no diversion of such water and required the appropriators of such stream who proposed to pipe the water off the land where the spring arose to establish a stand pipe and watering troughs so that the landowner could enjoy the use of such water in accordance with his previous practice.

On the question of what constitutes a taking or damaging of private property for public use we have held that a change in the grade of an adjoining highway and the building of a viaduct in the adjoining street inflicted compensable damages to the property of the adjoining landowner.[6] Clearly, if such cases caused actionable damage to adjoining property the building of a public project so that others may use water which subirrigates an adjoining owner's land and thereby deprives such adjoining owner of the beneficial use of such water is a compensable damage to such land. There can be no question but that this project is for a public use.

WORTHEN, Justice (dissenting).

I am unable to agree in its entirety with the statement of facts set out in the majority opinion. It is there stated:

"Appellant does not claim that he has the right to present proof of damage which might occur as a result of the operation of the entire project, but instead limits his appeal to his right to prove the injuries which will occur to him as a result of the operation of the canal."

The record discloses that counsel for defendant Bohman attempted to establish the amount of water it would take to irrigate his bottom land, "assuming that the water table is lowered by virtue of *this project* so that subirrigation will *no longer* mature his crops." Counsel for plaintiff objected on the ground that that was not a proper issue in this suit for condemnation of the narrow strip of land required for the canal.

The trial judge advised counsel for Bohman that he would be permitted to pursue the inquiry, and would consider it pertinent only "if you can tie it in as a water-table loss because of the construction of that canal up there, the physical construction upon that land." Counsel for defendant Bohman stated:

5. See Adams v. Portage Irr., 95 Utah 1, 72 P.2d 648.

6. See Webber v. Salt Lake City, 1911, 40 Utah 221, 120 P. 503, 37 L.R.A.,N.S., 1115; State by State Road Commission v. District Court, Fourth Judicial District, 94 Utah 384, 78 P.2d 502.

"Now, if your Honor please, *I'll not be able to tie it in, showing it's because of the physical construction of the canal upon the land.* I'll be able to tie it in, showing it's a result of the overall project, including the reservoirs, the diversion from the river, the holding back of the water, and the lowering of the water in the Weber River as a result of this project."

I am of the opinion that if defendant Bohman has a right to have the Weber River continue to subirrigate his bottom land by having the flood water flow past the same and fill the subsoil gravels, then he should be permitted to reserve his day in court till he is damaged and the case should remain in status quo until his damage can be established. But unless defendant Bohman has a valid existing right to have 5,000 second feet of water or such portion thereof as will sustain his water table flow past his property during high water season then the case should not be left open but judgment should be entered against defendant now.

I am of the opinion that plaintiff by its complaint has vested the court with full authority to consider the damages which defendant will sustain if and when the entire project is completed. True, plaintiff seeks to condemn in this action only the right of way for the Gateway Canal, but plaintiff has set out its full authorization with respect to the project as follows:

"Plaintiff is empowered by the laws of Utah, among other things, to con-tract with the United States, or any agency thereof, for the construction, preservation, operation and maintenance of tunnels, reservoirs, regulating basins, diversion canals and works, dams, power plants and all necessary works incidental thereto, and to acquire perpetual rights to the use of water from such works. In *conforming with such authority and power, plaintiff has entered into such a contract with the* United States for the construction on behalf of plaintiff on the Weber Basin Project, for the diversion, storage and distribution of water of the Weber River and its tributaries, and water from other sources for irrigation, municipal and industrial use, generation of electric power, flood control, recreation, fish and wild life purposes, and for drainage of project land." (Emphasis added.)

I am of the opinion that defendant Bohman is not entitled to recover any damages for the lowering of the water-table under his bottom land if and when the annual flood discharge from the snow melt is impounded in the reservoirs contemplated under the Weber Basin Project. Neither Bohman nor any predecessor in interest ever made an appropriation of any of said flood water which plaintiff now claims. There was never any diversion made by Bohman or any predecessor in interest from the natural channel. Whatever water reached the grav-

els under defendant's subsoil got there in spite of any act of defendant and not because of any act.

If defendant became an appropriator of the spring flood water of Weber River in the manner indicated it constitutes a novel appropriation and one without any diversion.

Such a contention completely ignores the doctrine of appropriation and applies the riparian doctrine never recognized in this state. To hold that defendant has a right to have the spring snow melt from April 15 to July 1 flow past his land in order to subirrigate the same, is to declare that defendant is entitled to waste up to 5,000 second feet of water each spring which might otherwise be used to irrigate thousands of acres of ground in the lower valleys in order for him to receive subirrigation in this most wasteful manner of some 20 to 28 acres of bottom land.

Had defendant or his predecessors in interest made an appropriation of unappropriated water of the river for the entire year by the installation of a tight dam which would have forced the river to raise to a point where his bottom land would have been subirrigated during the entire season or at such times as desired by him, there would be presented a different question.

1. 71 Utah 91, 262 P. 987, 991.

Under the riparian doctrine of water rights the owner of land contiguous to a stream is entitled to have the same continue to flow undiminished in quantity and unpolluted in quality, subject to the right of others on the stream to take therefrom what is required for domestic and household purposes and the watering of domestic animals. Irrigation was not a practice where the riparian doctrine was recognized. But this court early adopted the doctrine of appropriation and repudiated the riparian right doctrine.

In the case of State v. Rolio [1] this court quoted Section 2488 R.S.1898 (in substance the same as Section 68–3–1, Utah Code Annotated 1953) which provided: "'The common law of England, so far as it is not repugnant to, or in conflict with the Constitution and laws of the United States, or the Constitution and laws of this state, shall be the rule of decision in all the courts of this state.'" After discussing the conditions existing in this arid country and quoting from earlier cases the court observed: "In view of this, it is difficult to perceive that the Legislature, by the enactment of section 2488, R.S.1898, thereby intended, among other things, to establish and adopt in this state the English common-law doctrine as to riparian owners; * * *."

This court in the case of Whitmore v. Salt Lake City,[2] observed:

2. 89 Utah 387, 57 P.2d 726, 731.

"* * * If the water flowing in a natural stream is, as the statute declares, the property of the public, subject to existing rights, *and beneficial use is the measure* and limit of the right to the use thereof, it is difficult to perceive how a *landowner may successfully assert a right to water merely because it is flowing in a natural channel which passes over his land*. Under the common law an appropriator whose lands border upon a natural stream or through whose land it flows had certain rights in and to the water flowing in such stream. The doctrine of riparian rights is, in the main, at war with the law of appropriation. The common-law rights attached to riparian lands as a part thereof, while beneficial use is the foundation of the law of appropriation. Prior to the admission of Utah into the Union, this court held that:

" 'In this Territory the doctrine of riparian rights has never been recognized, and a statute of the Territorial legislature ignoring the right of a riparian proprietor at common law to have the water in a stream flow in quantity and quality as it was wont to do when he acquired title, is valid.' (Emphasis added.)

"The quotation is from the syllabus and reflects the doctrine announced in the case of Stowell v. Johnson, 7 Utah 215, 26 P. 290."

In the case of Stowell v. Johnson [3] decided by the territorial court of this state and reaffirmed in State v. Rolio, supra, and in Whitmore v. Salt Lake City, supra, the court said:

"* * * Therefore this decree ought to be affirmed, unless the other contention of the defendants is the law of this territory; that is, that the common-law doctrine of riparian rights is in force, and that when they, their grantors and predecessors in interest, purchased their land from the United States, the land above them was unoccupied, and the water unappropriated, and that they now are legally entitled to have the water flow as it was wont to flow when they, their grantors and predecessors in interest, purchased it, undiminished in quantity, and not deteriorated in quality.

"Riparian rights have never been recognized in this territory, or in any state or territory where irrigation is necessary; for the appropriation of water for the purpose of irrigation is entirely and unavoidably in conflict with the common-law doctrine of riparian proprietorship. If that had been recog-

3. 7 Utah 215, 26 P. 290, 291.

nized and applied in this territory, it would still be a desert; for a man owning 10 acres of land on a stream of water capable of irrigating a thousand acres of land or more, near its mouth, could prevent the settlement of all the land above him. For at common law the riparian proprietor is entitled to have the water flow in quantity and quality past his land as it was wont to do when he acquired title thereto, and this right is utterly irreconcilable with the use of water for irrigation. * * "

To concede that defendant Bohman has the right to require the flood water of Weber River to continue to flow past his land in order to fill the subsoil gravels is to repudiate the doctrine of appropriation in this case. In the case of Hardy v. Beaver County Irr. Co.[4] this court, at pages 40 and 43 of 65 Utah and at pages 529 and 530 of 234 P., said:

"So far as the claims of respondents, based on percolation and natural overflow from the river channel, are concerned, they are but assertions of riparian rights which are not recognized in this state. [Citing cases] * * *

"* * * Respondents could not legally establish a prior right to the use of water for irrigation by merely flooding their lands and by permitting it to gather into pools on the surface or raising the water level underneath the surface in the hope of obtaining sufficient moisture to raise crops in the ensuing summer. Such a use of water in this arid region is too wasteful to be tolerated when it can be used in the ordinary way for irrigation and other domestic purposes. We have therefore been compelled to disallow respondents' claims in that regard in so far as such use may be a basis or measurement in determining the amount of water to which respondents are entitled."

Certainly the waste which will entail by requiring the spring runoff to pass defendants' land and end up in Great Salt Lake should not be permitted.

In his concurring opinion Mr. Justice Wade observes:

"* * * It is a strange contention that he can be deprived of this *right of subirrigation* which results from natural causes but cannot be deprived of such right if it has been established by his own efforts for the damage to his property would be the same in both cases." (Emphases added.)

It must not be overlooked that the Constitution provides that "private property shall not be taken or damaged for public use without just compensation. * * * "

4. 65 Utah 28, 234 P. 524.

The constitutional guarantee protects only private property. What is the nature, extent and quality of appellant's water right? It is no answer to say that if he doesn't continue to enjoy the subirrigation of his land that the land is damaged. His land is not being taken. Unless he has a valid, existing water right, no property will be taken.

Would it be contended that appellant has a water right which he could transfer and which upon proper application could be diverted and used somewhere else and upon the refusal of the State Engineer to transfer said right an action could be maintained to compel him to authorize the change of place of use?

In the case of diversion, appropriation, and beneficial use of water a property right exists. Appellant has shown no diversion, appropriation or beneficial use. There is no right in him for the taking of which he is entitled to compensation.

A prerequisite to appellant's right of recovery is that his right to beneficial use of water must be in fact a water right, which certainly is not manifest here. Let it be conceded that he enjoys the use of the water; yet this enjoyment is not based on any right that he has acquired under the doctrine of appropriation.

The fallacy of the reasoning of the concurring opinion may be illustrated by the following example: Before 1903 A runs his irrigation water in a loosely constructed ditch which adjoins my land. Because the ditch is loosely constructed, enough water percolates therefrom to subirrigate my land and grow hay thereon along the length of the ditch. Would it be contended that I have a right to have the ditch maintained in its present location and condition so that the water would continue to subirrigate my land and that I could either prevent A from rerouting this ditch or cementing the same, or if he did, require that I be compensated? I think that no such result could logically follow under the laws of Utah, which exist to give effect to the fact that in this arid region all water must be put to beneficial use without waste. To adopt the contention of the concurring opinion is to put a premium on the inefficient use of our most precious commodity.

To say that appellant has a right to have enough water flow in the Weber River to subirrigate his land from back pressure is to say that appellant has a right to waste the majority of the river water in order to maintain sufficient pressure to subirrigate his land without any further effort on his part. What would really point up this controversy to a greater extent would be an application from some user upstream from appellant to appropriate additional water and apply it to beneficial use. Would the court say that appellant had the right to

have this water flow down past his land if there were another waiting to use it and if not used by such other it would merely flow past appellant's land? Such a right to use water in such a wasteful manner cannot be predicated upon the cases or on any statute cited in the concurring opinion.

Nor do I see wherein the case of Riordan v. Westwood [5] cited in the concurring opinion presents any fact situation similar to the case at bar. Nor does any language or dicta used in that case support the conclusion of the concurring opinion. It was assumed and conceded that the water in issue in the Riordan case was *percolating* water which naturally subirrigated the land by percolation from higher grounds.

There is a basic and significant distinction between the instant case and the Riordan case. In the Weber Basin case appellant is not claiming that the District is taking any water which formerly percolated through his soil from higher ground. Appellant claims that the District threatens to remove the water pressure from the spring runoff of Weber River, thereby permitting water in the subsoil gravels to run back into the river, which was the source of said water in said gravels. The water involved never percolated into and through appellant's soil from higher ground. It was in fact not percolating water in any sense of that term.

CROCKETT, J., concurs in the dissenting opinion of WORTHEN, J.