452 P.2d 866

Claude **BULLOCK**, John Carlile, Glen Wadsworth, Francis Gregory and Joe Hickey, Plaintiffs and Appellants,

v.

Reed **HANKS**, W. W. Smith, M. R. Wilde, Charles A. Meeks, Orson N. Behunin, and Hubert C. Lambert, State Engineer of the State of Utah, Defendants and Respondents.

No. 11189.

Supreme Court of Utah.

April 1, 1969.

D. Eugene Livingston, E. J. Skeen, Salt Lake City, for appellants.

Edward W. Clyde, Roland R. Wright, Phil L. Hansen, Atty. Gen., Dallin W. Jensen, Asst. Atty. Gen., Salt Lake City, for respondents.

CALLISTER, Justice.

Plaintiffs appeal from a decree of the District Court of Summit County affirming the decision of the State Engineer granting approval of an application to appropriate water.

Defendants filed an application to appropriate 1700 acre-feet of water from East Beaver Creek and Middle Beaver Creek, tributaries of Henry's Fork River, for

storage in an off-channel reservoir, which they proposed to construct in the Burnt Fork Creek drainage area and to release for irrigation use by them. The applicants proposed to convey the water from the two creeks by means of enlarging existing ditches, some nine miles long and to store it in a reservoir to be created by the construction of a dam, 30 feet high and 300 feet long. . .

The plaintiffs, who are owners of decreed water rights for irrigation and stock watering purposes in both Wyoming and Utah, protested the approval of the application on the grounds that there is no unappropriated water in the proposed sources, that the prior rights would be impaired, and that the project is not feasible.

Sec. 73-3-8, U.C.A.1953, provides:

It shall be the duty of the state engineer to approve an application if: (1) There is unappropriated water in the proposed source; (2) The proposed use will not impair existing rights, or interfere with the more beneficial use of the water; (3) The proposed plan is physically and economically feasible * * *; and (4) The applicant has the financial ability to complete the proposed works and the application was filed in good faith * * *.

Pursuant to the pretrial order, prepared by stipulation of the parties, the defendants had the burden of proving the first three requirements in the plenary review of the State Engineer's decision by the court below which proceeded as a trial de novo. The fourth requirement of the foregoing statute was not put in issue.

On appeal plaintiffs challenge the sufficiency of the evidence to support the finding that the proposed project was physically and economically feasible.

The trial court in a memorandum decision found that the plan proposed by the application of the defendants was physically and economically feasible. The court cited the opinion evidence of the State Engineer that a cost of $100 per acre-foot for water for irrigation purposes was within the range of feasiblity; and, therefore, the 1700 acre-feet requested for appropriation could bear a cost of $170,000. There was testimony to the effect that the proposed dam could be constructed for approximately $30,000. However, the court recognized that there was no specific information concerning the source of fill material and the clay needed for the core of the dam. The court cited the evidence that one of the existing ditches could carry 30 cfs. without further enlargement. The court further considered the opinion evidence as to the cost to enlarge the other existing ditch required in the proposed project. The court stated:

* * * While it is appreciated by the court that the estimates of the engineer are rough and his opinion is based upon

only what he has estimated would be needed without any survey of the area in question, still it would appear that the cost of enlarging the ditch between the two forks of Beaver Creek would not be prohibitive and render the proposed plan economically unfeasible. Since a ditch now exists that carries water between the two forks of the Beaver Creek, it would appear that an enlargement would not be physically impossible, and from the evidence and testimony, it would be my conclusion that based upon the cost per acre foot this project could bear as given by the State Engineer, that any plan for the construction of a dam to hold 1700 acre feet, together with the cost of enlarging the ditch between the two forks of Beaver Creek as well as possible further enlargement of the Gregory Ditch, would not be sufficiently great to render such construction and enlargements economically unfeasible.

Plaintiffs contend that defendants' evidence in regard to feasibility was strictly speculative. They cite the fact that the civil engineer, who testified as to the cost estimates, had not been to the dam site nor participated in any type of field survey of the project. However, the engineer was familiar with the area and had done the engineering and costs estimates for dams similar to the one proposed; in fact, he informed the court that the actual costs might be less than his estimates.

The State Engineer testified that he merely determines if there be a reasonable probability that a dam can be built, that water can be impounded, and that water will be available to be impounded, diverted and placed on the lands; if these requirements be met, the project is considered feasible. The State Engineer stated that on this project he determined whether it *could*, not *would*, be feasible.

Defendants argue that no applicant should be required at the approval stage to expend the money to design completely a dam, spillway, and other works and to dig test holes and expend other substantial amounts of money to assure he has a reservoir site. Such an expenditure is unmerited, since the application may be disapproved on some other ground, such as, nonavailability of water. With this contention, we agree; the standard applied by this court in United States v. District Court of Fourth Judicial District[1] is equally appropriate in the instant action.

* * * The object of the engineer's office is to maintain order and efficiency in the appropriation, distribution and conservation of water and to allow as much water to be beneficially used as possible. So construed, the law provides a period of experimentation during

1. 121 Utah 1, 12, 238 P.2d 1132 (1951) No. 11189.

which ways and means may be sought to make beneficial use of more water under the application before the rights of the parties are finally adjudicated. If we were to finally adjudicate applicant's right to change or to appropriate water at the time that such application was rejected or approved, he would get only such rights as he could establish by a preponderance of the evidence that he could use beneficially without interfering with the rights of others and in such hearing he would not have the benefit of any opportunity to experiment and demonstrate what he could do. Such a system would cut off the possibility of establishing many valuable rights without a chance to demonstrate what could be done.

■■■■ There is sufficient evidence in the record to sustain the judgment of the trial court that the proposed project is economically and physically feasible.[2]

Plaintiffs further contend that the proposed use would impair existing rights. they admit that defendants did offer proof that in some years, during part of the season, there would be excess water. They argue that this proof does not meet their complaint of impairment, which is premised on a contention that the diversion of water from the watershed would lower the water table and dry up their pasture and meadows and in the winter would cause the freezing of stock water.

Defendants respond that plaintiffs want not only the water rights decreed to them, but, in addition, they demand that all of the excess water be left undiverted so as to maintain the water table throughout the area.

■■■■ This court has previously held that the owner of land does not have any right to the waters percolating through the soil before they come into his land nor after they depart therefrom.[3]

■■■■ The trial court properly concluded that water can be diverted, stored, and used without injury to or conflict with the prior adjudicated rights of the plaintiffs, since in those years when the water flow is not normal, the plaintiffs' adjudicated rights will have to be satisfied before any water can be diverted for storage under defendants' application.

The judgment of the trial court is affirmed, costs are awarded to defendants.

CROCKETT, C. J., and TUCKETT, HENRIOD, and ELLETT, JJ., concur.

---

2. Since the proceeding in the district court is equitable in nature (§ 73–3–15, U.C.A. 1953), the findings of the court will be disturbed only if the evidence clearly preponderates against them. Shields v.

Dry Creek Irrigation Company, 12 Utah 2d 98, 102, 363 P.2d 82 (1961).
3. Weber Basin Water Conservancy District v. Gailey, 8 Utah 2d 55, 61, 328 P.2d 175 (1958).