512 P.2d 1022

STATE of Utah, By and Through its ROAD COMMISSION, Plaintiff and Appellant,

v.

George TANNER et al., Defendants and Respondents.

No. 12688.

Supreme Court of Utah.

July 17, 1973.

Vernon B. Romney, Atty. Gen., Salt Lake City, George S. Ballif, Special Asst. Atty. Gen., Provo, for plaintiff-appellant.

E. J. Skeen, of Skeen & Skeen, Salt Lake City, for defendants-respondents.

HENRIOD, Justice:

Appeal from an award by jury verdict for drainage water alleged to have been taken in a condemnation action by the State where defendants were awarded $75,000 for taking and severance damages,

excluding the instant claim, incident to a highway project, where the drainage phase was separated by stipulation, for future adjudication. The later award by the court, sitting without a jury, of $38,800 for such drainage on account of waters interfered with, is attacked on this appeal, and we reverse the trial court's decision in this respect. No costs to anyone.

Defendants and their predecessors installed drains in the subject property to get rid of water which was soaking the land, which drainage installation, at their own expense, was designed to rid the land of undesirable water in order to make the Tanner tract productive rather than useless,—and not to put the water to a beneficial use in the appurtenant land. The Tanner interests were awarded some kind of rather indefinable rights in this unwanted and troublesome water in the also troublesome decree [1] so that the Tanner interests actually sold the water for a use by somebody else, at a point of diversion about five miles upstream. Suffice to say that the fact that the Tanner interests claimed and sold waste water doesn't prove much, and especially with respect to ownership, the decree to the contrary notwithstanding, which we think not apropos here. We think the damages awarded for loss of

water collected in these drains are not compensable, because: 1) They are based on speculation; 2) are consequential, and 3) are subject to the defense of sovereign immunity.

As to 1): The drains were installed by defendants to rid themselves of the water in order to preserve the value of their land, and not to collect for sale to others. Utah should not have to subsidize such sale, or the loss of it. The record reveals that, except for a decree recognizing the drains and the waste water therein and permitting its diversion about five miles upstream, it appears that the subdividing of property upstream, making it residential instead of agricultural, would diminish the seepage flow that appears to have been feeding the drains rather than from a flow of established aquifers. Because of this uncertain circumstance, the damages in this case become speculative, which are not assessable by a jury or other arbiter of the facts.

As to 2): Except for some doubtful impact of State v. Rohan, 26 Utah 2d 202, 487 P.2d 857 (1971), on the previously established concept of immunity from payment for consequential damages, precedent in this State certainly would treat this

1. Provo Reservoir Co. v. Provo, Case 2888 Civil, 4th Judicial District Court, in and for Utah County, State of Utah (1921).

waste water as being non-compensable on the basis of consequentiality and non-severability. To sanction any other result under the water cases preceding this one, would be something akin to saying that one living on a freeway would have a vested right to have people throw beer cans on his property in perpetuity so that he could sell them for recycling purposes.

■ As to 3): Defendants' claim obviously is not structured on a taking of land for a public purpose. It appears to be a tort claim for interfering with some drains or interfering otherwise in a diminution in the flow of waste water. Again I refer to Mr. Justice Ellett's concurrence. The State in this suit did not ask to take any water or water rights for a public purpose at all. The best defendants can urge here, besides such interference, would be on the basis of severance damages. Both parties seemed to have recognized that this theory was not tenable since the matter of damages for the actual taking and for severance damages were resolved and no one is contesting those matters,—the parties in apparent agreement recognizing the difference with respect to the waste water by stipulating that this question could be resolved not by the jury as the other issues were, but by the court in a separate trial.

The drains were installed, not to use the water beneficially on the land, but to get rid of it so the land could be used beneficially,—ultimately to sell it, as trash, so to speak, to someone else who could use it one way or another. The sale of this water well may have been accomplished for a purpose that did not even resemble a beneficial use thereof. The claim for compensation for this waste water being one sounding ex maleficio, and not on appropriation for beneficial use upon the claimant's land, defendants, if they had any claim at all, should have pursued an action under the Utah act having to do with waiver of immunity, which was not done, and which should resolve this case into a remand with instructions to vacate the judgment relating to this waste water. In this respect, I refer again to Mr. Justice Ellett's concurrence.

CALLISTER, Chief Justice (concurring).

This case appears to be analogous to Weber Basin Water Conservancy District v. Gailey [1] wherein this court held that a landowner has suffered no compensable damages where the construction of a public improvement lowers the water table and thus removes moisture from the land. The court reiterated the principle, which is

1. 8 Utah 2d 55, 328 P.2d 175 (1958).

herein controlling, that the owner of the land does not have any right to the waters percolating through the soil before they come into his land nor after they depart therefrom.[2]

ELLETT, Justice (concurring).

I concur but would like to add the following:

The appellant, hereafter called Commission, brought an action under the eminent domain statute to condemn a parcel of land belonging to the respondents. The value of the land taken and severance damage, i. e., the damage caused to the land not taken because of the construction, were fixed by a jury at $75,000. No complaint is made by either party as to this sum. This should have been the end of the matter in connection with the eminent domain statute.[1]

The defendants had drain ditches in their lands to lower the water table, and the water thus collected in the drain ditches was personal property and was as such sold to others.

The court permitted the defendants to claim damages against the Commission for an alleged diminution in the amount of wa-

ter drained from its land collected in the ditches and sold. There was no pleading made by defendants claiming such damages and no notice ever filed with the Attorney General as required by Sec. 63–30–12, U. C.A.1953 (Replacement Vol. 7A). Therefore, the claim made could not be asserted against the Commission even if immunity was waived so as to permit recovery.

I am unable to find in the statutes of this State where sovereign immunity is waived for a claim such as the one being made here. The matters for which immunity from suit is waived are set out in Title 63, Chapter 30, U.C.A.1953 (Replacement Vol. 7A), and are:

Sec. 5. Contractual obligations.

Sec. 6. Recovery of real or personal property.

Sec. 7. Negligent operation of a motor vehicle.

Sec. 8. Dangerous conditions of a highway.

Sec. 9. Dangerous conditions of public building.

Sec. 10. Negligent acts or omissions of an employee within the scope of his em-

---

2. See Bullock v. Hanks, 22 Utah 2d 308, 312, 452 P.2d 866 (1969).

1. Sec. 78–34–10, U.C.A.1953.

ployment—with stated exceptions thereto.

Although the attorney for the Commission prior to trial stipulated that the amount of loss to the defendants for diminution of drain water could be tried at a separate hearing, that would not, and could not, waive any sovereign immunity of the Commission or make a cause of action where none otherwise existed. An attorney representing the Commission would not be able to change the law. Only the legislature of this State could do that.

As to the rights of the defendants in and to the drain water, they had none whatsoever until they got it in their ditches. They had made no beneficial use of the water and did not have any right to have the water table remain at any particular level. Anyway, the level would vary from year to year according to the amount of rain which falls and to the amount of irrigation water placed on higher land.

As farm lands would be subdivided and no irrigation water used thereon, the water table would likewise fall. Would anyone claim that diminution caused thereby of water in defendants' ditches would give them a cause of action against the subdivider or against a farmer who elected not to irrigate? It would seem that if they have a right to compel the state to refrain from lawful activity which diminishes the amount of water which they collect in their drain ditches, they should likewise have the same rights against the subdivider and the farmer who by their lawful conduct caused the water table to be lowered.

I would reverse the trial court on two grounds: First, the claim made cannot be maintained against the Commission because the defendants have no rights to the water until they collect it in their drain ditches; and second, if the claim could have been maintained against the Commission, it is forever barred now because the defendants did not file their claim with the Attorney General within one year after it arose as required by Sec. 63–30–12, U.C.A.1953 (Replacement Vol. 7A).

CROCKETT, Justice (dissenting).

The plaintiff Road Commission seeks to reverse that part of the judgment of the district court in condemnation proceeding which awarded to the defendant Tanner $38,800 for disruption of flow and diminution of water by its construction of a highway known as the "BYU Diagonal" across Tanner's land between Orem and Provo.

This case was divided into two parts. The first was a jury trial as the value of the defendant's land taken, together with severance damages, for which defendant

Tanner was awarded $75,000. Both parties and the trial court realized that there was an unusual situation with respect to the claim of damages for impairment of water accumulations on the defendant's land and the usefulness thereof. Consequently, the parties agreed upon a separate proceeding to be held subsequent to the jury trial. They signed and filed a stipulation which expressly stated that no evidence concerning any damages "to the water collection and transmission system of defendants and the loss of water resulting from the taking of land and construction of the public improvement . . ." should be submitted to the jury, but that that matter should be " . . . reserved for trial to the court, sitting without a jury."

The jury trial was completed October 23, 1970. Thereafter, on March 29, 1971, counsel for the parties appeared before the court for discussion of the remaining phase of the case. Pursuant thereto a pretrial order as to that phase of the case was signed and entered by the court on April 13, 1971. It recited the previous proceedings, and specifically stated the issues to be tried by the court, including:

Whether the construction of the . . . public improvement damaged the underground water drainage system of the defendants . . . [and] . . .

. . . resulted in a diminution in the yield of water from the defendants underground draining system . . . and

. . . the amount of damage, if any, suffered by defendants from a diminution from the yield of water.

This pretrial order made no mention whatsoever of any contention or requirement that the defendant was obliged to file a claim under the Governmental Immunity Act;[1] and the plaintiff Road Commission made no contention or objection in that regard. That phase of this case, which is now here on appeal, was tried entirely upon the issues as stated in that pretrial order. Under those circumstances the Commission should not now be heard to argue that defendant was obliged to file such a claim.[2]

Even more important than the foregoing is the fact that this case in no sense involves any action commenced by the defendant against the state of Utah or any agency thereof. It was initiated by the State Road Commission against the de-

---

1. Sec. 63–30–12, U.C.A.1953.

2. See Rule 16(5), U.R.C.P., providing for the making of a pretrial order which " . . . when entered controls the subsequent course of the action . . ."

An analogous case, Rumsey v. Salt Lake City, 16 Utah 2d 310, 410 P.2d 205, where the city had similarly stipulated to issues, held it could not thereafter raise the issue of governmental immunity.

fendant; and there is *only one subject matter dealt with:* The taking of defendant's land and determining the amount of damages that will provide legitimate and just compensation therefor.

It is conceded that the defendant has been awarded "just compensation for the property taken and some severance damages." The question here presented relates solely to his entitlement to, and the extent of, further severance damages. Our statute defines this as "the damages which will accrue to the portion not . . . [taken] . . . by reason of its severance from the portion . . . [taken] . . . and the construction of the improvement . . . "[3]

In determining severance damages, the general rule is that all factors bearing upon the value should be taken into account.[4] It is submitted that this would necessarily include the natural accumulation of water on the defendant's property, and the uses thereof, just the same as if it had had a natural lake, a duck pond, a water hole, or an orchard, or any other such desirable feature integral to the land. On the other hand, it is appreciated that if the matter of concern here were simply a wa-

ter right of the conventional type, i. e., the right to use water from a canal or other water source, which is severable from the land and salable separately therefrom, it would not be part of the severance damage. But I do not regard that as being the nature of the right involved here. Moreover, the matter of the damages to the defendants' property relating to the accumulations of water and the uses thereof resulting from the taking of his land and the construction of the freeway was not presented to the trial court as being of the character of a separately owned and salable water right.

From all of the foregoing it seems to me so clear that it should not be subject to doubt or argument that the defendants' attempt to prove the severance damages here in question is not the character of "an action" against the state which requires notice under the Governmental Immunity Act. To now rule otherwise under the circumstances here shown, where the agreement with plaintiff and the trial court had precluded him from presenting to the jury any evidence of damage caused to his property relating to the accumulation and use of waters, may result in a loss to him

---

3. Sec. 78–34–10(2), U.C.A.1953.

4. State Road Commission v. Wood, 22 Utah 2d 317, 452 P.2d 872; State Road Commission v. Woolley, 15 Utah 2d 248, 390 P.2d 860; Weber Basin Water Con-servancy District v. Ward, 10 Utah 2d 29, 347 P.2d 862; as to adversely affecting waters on the property see statement in Bd. of Education, etc. v. Croft, 13 Utah 2d 310, 373 P.2d 697, and authorities therein cited.

of at least some damage the jury could otherwise have included in its verdict, and unjustly deprives him of the damages the trial court found in his favor.

I trust that the main opinion will not be regarded as a precedent for what would seem to be its logical conclusion: that a condemnee in such an action, in order to prove his damages for anything other than the land itself, such as his house, barn, garage, millpond, etc., would have to file a claim under the Governmental Immunity Act.

With respect to the plaintiff's second attack upon the judgment: that the evidence does not support the trial court's findings, I willingly agree that if the Road Commission's evidence be accepted in the light favorable to it, it could be regarded as supporting its thesis: that the water for which Tanner claims compensation was mainly irrigation waste waters collected in his drain system, and that the recent diminution in quantity was due to the changing of neighboring agricultural lands to residential rather than to the construction of the freeway. But as we are often obliged to reiterate: this court should not view the evidence according to the desires and objectives of the loser, but should indulge the assumption that the trial court believed those aspects of the evidence favorable to his findings.

On the defendant's side there was qualified expert testimony that the physical changes brought about by the taking of his land and the construction of the highway resulted in a reduction of accumulations of water amounting to 480 acre feet annually; and that this annual yield of water had a value of up to $75,000. Regarding the basis of the defendants' rights to these waters: they were recognized and included in a general decree in the case of Provo Reservoir Company v. Provo City, dated May 2, 1921, (2888 Civil). The decree stated in part:

> That [Tanner's predecessor] be given seepage and spring water accumulating and arising upon her land, and collected by her in the drainage system laid upon said land.

Whether the water in question so owned by the defendant came from seepage, natural springs, or what is termed percolating waters in the land, is of no concern to the condemning plaintiff. The defendant is entitled to just compensation for diminution of the value of his property caused by loss of the waters or interference with the use thereof.[5]

---

5. Crescent Mining Co. v. Silver King Mining Co., 17 Utah 444, 54 P. 244; State Highway Commission v. Ponten, 77 Wash.2d 463, 463 P.2d 150; 2 Nichols on Eminent Domain, p. 255, Sec. 5.78

(1) and cases therein cited. The citation of Weber Basin v. Gailey by the Chief Justice is appreciated as instructive on this problem, 5 Utah 2d 385, 303 P.2d 271. It is to be noted that it

The resolution of the conflict in the evidence is shown in the trial court's findings: that due to the construction of the highway, the annual yield of the defendants' water decreased 480 acre feet; and in order to negative plaintiff's contention, he made the further specific finding that:

> There were no factors other than the construction of the expressway which would explain the decrease of the yield of water by the said drainage system.

Instead of taking the maximum appraisal of the $75,000, the trial court found that the decrease of the yield of water had caused the defendants damage in the amount of $38,800.

Because in my view there is substantial and credible evidence supporting the findings and judgment, I would not take away from the defendant the damages found by the trial court to be the reasonable compensation for diminution in accumulations of water on his property under a procedure agreed to by the State Road Commission.

TUCKETT, J., concurs in the views expressed in the dissenting opinion of CROCKETT, J.

dealt with a situation different from the instant one; and that that case stated at p. 60 of 8 Utah 2d, 328 P.2d at p. 178, that "It seems that the landowner does have some rights in the waters naturally occurring in his soil . . . . while they remain therein; and we do not doubt that no one . . . could in effect, pirate the waters, by making an artificial canal or other excavation for the purpose of draining the land, without being held responsible."