291 P.2d 1028

STATE of Utah, by and through its Engineering Commission, D. H. Whittenburg, Chairman, H. J. Corleissen and Layton Maxfield, Members of the Engineering Commission, Plaintiff and Appellant,

v.

Fred TEDESCO et al., and Burton F. Peek and Charles D. Wiman, Trustees under the Will and of the Estate of Charles H. Deere, deceased, Defendants and Respondents.

No. 8290.

Supreme Court of Utah.

Jan. 9, 1956.

E. R. Callister, Atty. Gen., Robert B. Porter, John W. Horsley, Asst. Attys. Gen., for appellant.

Dickson, Ellis, Parsons & McCrea, Calvin Behle, Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from a condemnation judgment entered after verdict for 1) the value of a water system, 2) a Parcel 1, consisting of

an unsubdivided area and a subdivided area of some 80-odd lots, 62 of which remained unsold, and 3) 8% interest on the additional amount adjudged on the second trial ordered by this court, for the period between the two judgments.

■ As to 1) : The judgment is affirmed. We believe there was sufficient competent evidence of value and an independent use that could have been made of the water system, unrelated to the condemned property, as would sustain the jury's verdict.

As to 2) : The judgment is reversed with instructions to take evidence anew as to the value of Parcel 1.

Plaintiff urges many errors, only 3 of which, we believe, need treatment here: 1) That 2 of plaintiff's 3 experts were precluded from telling how they arrived at their appraisals, a restriction which plaintiff claims was prejudicial; 2) that the court erred in denying plaintiff's motion to strike the testimony of defendants' 3 experts which plaintiff asserts was predicated on adding together the values of each lot after assigning to each an amount representing the sales price of comparable lots in the vicinity; and 3) that it was error to allow 8% interest on the additional amount awarded in the second trial dating from the first trial's judgment.

■ Each side had 3 appraisers. Plaintiff's experts said the property was worth about $160,000. Defendants set the figure at about $300,000, a difference of about $140,000. One of plaintiff's appraisers was allowed to state the reasons for his conclusion, but the other two were not so permitted, while defendants' experts (admittedly without objection on the part of plaintiff except for motion to strike at their testimony's end) enjoyed considerable latitude in stating how and why they arrived at their conclusions as to values. We believe such exclusion of the proffered testimony and the failure to grant plaintiff's motion to strike defendants' experts' testimony as to value were, under the circumstances of this case, prejudicial. In saying so, we believe defendants' counsel will not gainsay the competency and admissibility of such proffered testimony when they say, in their supplementary brief that "The law is well settled that the party offering an expert is at liberty to reinforce his judgment by showing the ground on which it is based."[1]

A reading of the testimony of defendants' experts can lead to no other reasonable conclusion than that they arrived at their determination of Parcel 1's value by taking the sales prices of comparable lots in the vicinity, assigning such values to the individual lots involved in this litigation and adding them up, without considering any cost or expense incident to the sale of each of the lots or the time within which the lots might have been sold. In other

1. Thornton v. City of Birmingham, 250 Ala. 651, 35 So.2d 545, 7 A.L.R.2d 773; 20 Am.Jur. 661, Sec. 787, Evidence.

words, they assumed that there was a willing seller of 62 lots who had 62 present willing buyers, with nothing left to do but deliver an ownership document, without considering a windfall that would result in favor of the sellers when this condemnation relieved them of paying commissions for the sale of the lots, the completing of streets, paying abstract costs, taxes which daily increase because of customary proration, advertising costs, management and supervision expense and last, but not least, by assuring them a fair profit, all of which no doubt were included in the sales prices of the comparable lots in the vicinity which the experts considered in making their appraisals. Parenthetically, we suggest that no one seriously would contend that a 62-lot tract sold to one person would produce as much as would 62 separate sales to individual homeseekers. It is unrealistic to say that the factors mentioned should not be considered in determining present fair market value, and the fact that defendants' experts ignored them and did not deduct them from sales of comparable lots, which no doubt had them included, coupled with the fact that two of plaintiff's appraisers were precluded from testifying how they arrived at their much lower figure by deducting such items, seem to us to point to prejudice which we believe was not overcome by the instructions given either in the aggregate or individually.

A condemnee is not entitled to realize a profit on his property. It must go to the condemnor for its fair market value, as is, irrespective of any claimed value based on an aggregate of values of individual lots in a subdivision which one hopes to sell at a future time to individuals rather than to an individual.[2] The test is not what the lots will bring when and if 62 willing buyers come along, but what the tract, as a unit, and as is, platted or not, and in whatever state of completion, will bring from a willing buyer of the whole tract. As has been said:

"The jury are to value the tract of land and that only. They are not to determine how it could best be divided into building lots, nor conjecture how fast they could be sold, nor at what price per lot. A speculator or investor, in deciding what price he could afford to pay, would consider the chances and probabilities of the situation as then actually existing. A jury should do the same thing. They are not to inquire what a speculator might be able to realize out of a resale in the future, but what a present purchaser would be willing to pay for it in the condition it is now in."[3]

2. 4 Nichols, Eminent Domain, 107; Kansas City & T. Ry. v. Splitlog, 45 Kan. 68, 25 P. 202; Wassenich v. City and County of Denver, 67 Colo. 456, 186 P. 533; State v. Deal, 191 Or. 661, 233 P.2d 242.

3. Pennsylvania S. V. R. Co. v. Cleary, 125 Pa. 442, 17 A. 468, quoted with approval in U. S. v. 3,544 Acres of Land, etc., 3 Cir., 147 F.2d 596, 598.

As to 3): We hold that defendants are entitled to 8% of the first case's adjudged amount from May 27, 1952, to 6% on any additional amount adjudged in a subsequent trial ordered by this court during the period between judgments, and 8% on any additional amount adjudged in any such subsequent trial ordered by this court after entry of such subsequent judgment for any such additional amount.

No costs awarded.

McDONOUGH, C. J., and CROCKETT, WADE, and WORTHEN, JJ., concur.