347 P.2d 862

**WEBER BASIN WATER CONSERVANCY DISTRICT, Plaintiff and Appellant,**

v.

**Harold L. WARD, C. Arnold Ferrin and Lucille N. Ferrin, his wife, Leslie Olsen and Jessie Olsen, his wife, et al., Defendants and Respondents.**

No. 8881.

Supreme Court of Utah.

Dec. 24, 1959.

Neil R. Olmstead, Ogden, E. J. Skeen, Salt Lake City, for appellant.

Young, Thatcher & Glasmann, Ogden, for respondents.

McDONOUGH, Justice.

The plaintiff Weber Basin Water Conservancy District appeals and seeks to reverse a judgment awarded against it in favor of defendants Olsen, et al., for 66.8 acres of land it condemned for use in enlarging the Pineview Reservoir in Ogden Valley in Weber County. The State Road Commission also condemned 5.6 acres to be used in rerouting the highway because of the change in the reservoir. This took a total of 72.4 acres of the 360 acres of defendants' dairy farm. The cases were tried together and the only issues contested were as to damages. The jury verdict was for $500 per acre for the land taken and $23,109 severance damages. Under prior stipulation, these amounts were apportioned by the trial judge. The State Road Commission did not appeal, but Weber Basin did.

The points raised are: (A) That there is no valid basis in the evidence to support the judgment because the defendants' experts were allowed to use improper elements in evaluating the land; that errors were committed in limiting the examination of the defendant Leslie Olsen as to value of his land; and (B) sustaining objection to a question as to how much he had paid for it 6½ years before, and (C) refusing to admit evidence as to his income tax returns to show whether his dairy operation was in fact prosperous.

(A) The basis of the attack made upon the defendants' expert evidence is that they relied upon the increased value of the land occasioned by Weber Basin's plans for improvement of the area in increasing farm values thereabouts. The plaintiff urges the view adopted by some courts that the value of the property for condemnation purposes should be determined without consideration for the fact that the condemnor has entered the market and plans improvements.[1] The argument supporting such rule appears to be that the condemnee should not be allowed an advantage from the fact that the condemnor is improving the area and the latter be required to pay a higher price and thus in effect suffer a penalty because of its own improvements. The contrary view is that eminent domain statutes are designed only to give the condemnor the power to purchase property whether the condemnee desires to sell or not, but are not purposed

1. Harris v. Board of Commissioners of Wyandotte County, 151 Kan. 946, 101 P. 2d 898; United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 331, 147 A.L.R. 55; see also United States v. Cors, 337 U.S. 325, 69 S.Ct. 1086, 93 L.Ed. 1392.

to give the condemnor any superior bargaining position as to price.[2] We are in accord with what appears to be the better view, adopted by the trial court, that the condemnee is entitled to the fair market value of his property at the time of the service of summons in the condemnation proceedings as provided by statute;[3] and that all factors bearing upon such value that any prudent purchaser would take into account at that time should be given consideration, including any potential development in the area reasonably to be expected. We make the above observations upon this issue because we have concluded that other assignments of error as to the exclusion of evidence are well taken and require that the cause be remanded for a new trial.[4]

■■■■ (B) It was in examining the defendant Leslie Olsen with respect to the value of his land and the damages occasioned by the severance of the 72 acres that counsel was met with the obstacles referred to above. Counsel asked him the purchase price when he bought the farm 6½ years before, to which the court sustained an objection. While we recognize that if a prior sale is too remote in point of time, and changed conditions have intervened so that the trial court thinks the evidence has no probative value, he may sustain the objection, we do not regard the instant situation as falling within that classification. The various arguments against admitting this evidence concerning the change of condition and the general increase of prices of land and the variation in value of money are all subject to explanation. The time is not so remote as to eliminate the probative value of the price as some evidence to consider in placing a fair value upon that land. The more remote the time of the prior sale the less probative value it may have on the immediate situation, but that goes to the weight of the evidence and not its competency or its relevance. It is quite universally recognized that sales of the same property at any reasonable time in the past is relevant evidence on the issue of present value. As observed by the Supreme Court of Kentucky:[5] "Such sales, when made under normal and fair conditions, are necessarily a better test of the

2. Guyandotte Valley R. Co. v. Buskirk, 57 W.Va. 417, 50 S.E. 521; Stafford v. Providence, 10 R.I. 567, 14 Am.Rep. 710.

3. § 78–34–11, U.C.A.1953: "For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the service of summons, and its actual value at that date shall be the measure of compensation for all property to be actually taken, and the basis of damages to property not actually taken, but injuriously affected, in all cases where such damages are allowed, as provided in the next preceding section. No improvements put upon the property subsequent to the date of service of summons shall be included in the assessment of compensation damages."

4. Rules 76(a), Utah Rules of Civil Procedure; Joseph v. W. H. Groves L.D.S. Hospital, 7 Utah 2d 39, 318 P.2d 330.

5. City of Paducah v. Allen, 111 Ky. 361, 63 S.W. 981, 983.

market value than speculative opinions of witnesses; for, truly, here is where 'money talks.' "

(C) On the issue as to the claimed profitable operation of the dairy as a balanced economic unit counsel sought to examine Mr. Olsen on the income as follows:

"Q. Now, Mr. Olsen did you realize a net profit from the operation of your dairy farm in 1955:

"Mr. Young: I renew the objection * * *.

*     *     *     *     *     *

"A. I don't know.

"Q. I hand you your 1955 income tax return and I'll ask you to examine that and then answer the question.

"Mr. Young: I renew the objection * * * these complicated income tax returns, there is no showing that Mr. Olsen prepared it.

"The Court: I am going to sustain the objection.

"Q. Do you know whether you operated the dairy farm at a profit from 1951 to 1956 inclusive? A. No sir.

"Mr. Young: The same objection."

■ It is to be kept in mind that at that stage of the trial Mr. Olsen had been called by the plaintiff as an adverse witness and in view of his reluctance to make disclosures on material facts should have been accorded the privilege of cross-examining him. His testimony was certainly less than candid, he even refused to hazard a guess as to whether his dairy had operated at a profit. Whether he prepared his income tax returns was quite immaterial, he signed them and is charged with responsibility therefor and counsel should have been permitted to examine him with respect thereto.[6] The objections of defense counsel and the rulings of the court prevented effective inquiry into the important and material fact: whether the dairy farm was in fact a well-balanced economic unit as the defendant claimed. The purpose of cross-examination is to give adversary counsel the opportunity not only to inquire into uncertainties relating to the testimony in chief, but to test its credibility. Whatever may tend to explain, modify or contradict that direct evidence should be allowed. Even though it is generally said that the trial judge has discretion to control cross-examination within reasonable limitations, he should not so restrict it as to prevent inquiry into matters having a direct bearing upon vital issues as was done here.[7]

6. The Sultana, D.C., 77 F.Supp. 287. For another view see Maddox v. Wright, D.C., 103 F.Supp. 400. Compare Holtz v. United Plumbing & Heating Co., 49 Cal. 2d 501, 319 P.2d 617.

7. For a good statement as to the purpose and scope of cross-examination see statement of Wade, J., in State v. Peek, 1 Utah 2d 263, 265 P.2d 630.

34

Judgment reversed and the cause is remanded for a new trial. Costs to appellant.

CROCKETT, C. J., and WADE, J., concur.

HENRIOD, J., concurs in result.

CALLISTER, J., being disqualified does not participate herein.