390 P.2d 860

**STATE of Utah, by and through its ROAD COMMISSION, Plaintiff and Appellant,**

**v.**

**Frank A. WOOLLEY and Mildred H. Woolley, his wife, Defendants and Respondents.**

**No. 9966.**

Supreme Court of Utah.

April 7, 1964.

A. Pratt Kesler, Atty. Gen., Norman S. Johnson, Asst. Atty. Gen., Robert S. Campbell, Jr., Sp. Asst. Atty. Gen., Salt Lake City, for appellant.

Van Cott, Bagley, Cornwall & McCarthy, Clifford L. Ashton, Howard L. Edwards, Salt Lake City; for respondent.

WADE, Justice.

The State Road Commission brought condemnation proceedings against Frank A. Woolley and his wife, who are the respondents herein, to acquire lands owned by them for use in connection with the construction of a highway project. This appeal is by the State Road Commission from a judgment based on a jury's verdict awarding the respondents Woolley the sum of $20,000 for the land taken from them.

The land taken was a tract containing approximately 77 acres located between U. S. Highway 30 and the Union Pacific Railroad right of way. It is a long, narrow strip varying in width from about 500 feet to 100 feet. The property ran to the. Utah-Wyoming State line at which place it was approximately 500 feet in width. Before the Road Commission brought these condemnation proceedings, it had acquired from the Woolleys about one-fourth of the property bordering the State line on which there were some buildings, so that about one-fourth of the 500 feet in width bordering the State line did not belong to

the Woolleys. From the evidence of Frank A. Woolley and the experts who testified in his behalf, it appears that the portion of the property belonging to the Woolleys which was located at or near the State line was suitable for commercial purposes, particularly for a service station. From the record it appears that the land taken had been used for storing and stockpiling clay and for grazing. Mr. Wooley testified that he had bought the property for investment purposes in 1954 and his plans to put the property contiguous to the State line to a commercial use was deterred by action of the State in 1956. These condemnation proceedings were commenced in February 1963.

Appellant contends the court committed prejudicial error when it excluded from the testimony of one of its expert witnesses a sale price of other comparable lands which was used by him as a basis in forming his opinion as to the value of the lands taken herein.

The record discloses that this witness based his opinion as to the value of the lands taken herein solely on its worth for agricultural purposes and did not think that the portion of the land which was contiguous to the State line would bring a better price on the open market for commercial use than it would for agricultural use. This opinion conflicted with that of respondents'

witnesses, who were men whose experiences were particularly related to evaluating property for service station purposes. In their opinion a 200 x 145 ft. portion of respondents' property adjoining the State line would be worth between $25,000 and $35,000 for the erection of a service station. The jury evidently agreed with respondents' witnesses that the location of the property at or near the State line was considerably more valuable because of its commercial potentialities than the remaining property located a greater distance from the State line, the use of which was mainly suitable for stockpiling or agricultural purposes.

■ Even though it would have been error for the court to exclude evidence of prices paid for comparable property,[1] the State did not object to the court's ruling nor did it make any offer of proof that the location and the lands, the sales price of which was excluded, were similar to the lands taken in this action. In view of the opinion of the State's expert that the location of the property at or near the State line did not make it any more valuable for commercial uses than other property located greater distances from the State line, and that regardless of location its value was that of land suitable only for stockpiling or agricultural purposes, if error was committed, it was not prejudicial, the jury hav-

1. State, By and Through Its Engineering Commission v. Peek, 1 Utah 2d 263, 265 P.2d 630.

ing the benefit of the bases for both parties' opinions as to value.

■ Appellant further contends that prejudicial error occurred when the court allowed on cross-examination of one of the State's witnesses the fact to be brought before the jury that federal funds were involved in these condemnation proceedings because he had to disclose that part of his remuneration for appraisal services paid by the Federal Government. We find no merit to this contention. The record discloses that the jury viewed the premises, and it could hardly be possible that they were unaware of the fact that the highway project for which the property was taken was part of the federal project of interstate highways. If a juror did not already know that the Federal Government makes major contributions toward such highway projects, the fact that the Federal Government pays an appraiser's fee would not necessarily suggest that it would pay for the property being taken and therefore, perhaps, tend to make such juror more generous in his award than if he believed the State would be solely responsible for payment.

The State also claims prejudicial error because Mr. Woolley, the owner of the property, in testifying as to how he arrived at what he considered its value, was allowed to testify he bought the land for investment purposes; that through his own knowledge

in leasing service stations and from information he received in contacting oil companies interested in obtaining service stations, he was of the opinion that the portion of his property which was adjacent to the highway for a distance of about 250 feet, and which had a depth of 145 feet was worth $30,000 because it was located near the Utah-Wyoming State line. He further testified that he had the property close to the State line surveyed in 1956 for the purpose of erecting a service station thereon but was prevented by the State from proceeding. He also testified that the property located close to the Wyoming-Utah State line was also particularly valuable because of the price differential in gasoline in those two states due to the differences in laws which had been in existence for at least 10 years.

■■ The court did not err in allowing the owner to testify to the above facts. These were all factors which a prudent buyer of land would consider in arriving at a value. The location of the land and its peculiar value because of such location, which made it especially valuable for commercial usage such as a service station, were relevant for a proper determination of the best use to which the property could be put. The owner of property in a condemnation proceeding is entitled to the fair market value of that property at the time summons is served and as stated in Weber

Basin Water Conservancy District v. Ward:[2]

> "* * * all factors bearing upon such value that any prudent purchaser would take into account at that time should be given consideration, including any potential development in the area reasonably to be expected."

■ All the State's expert witnesses valued the property taken to be worth approximately $8,000, whereas the respondents' witnesses who were men engaged in acquiring service station locations and in operating service stations valued the small parcel adjacent to the Wyoming-Utah State line because of its location at between $25,000 and $35,000. The jury's award of $20,000 is adequately supported by the evidence, and there is therefore no merit to the State's contention that there is insufficient evidence for the jury's verdict.

Affirmed. Costs to respondents.

McDONOUGH, CALLISTER, and CROCKETT, JJ., concur.

HENRIOD, Chief Justice (concurring in the result).

I concur in the result, but not with any implications that might be indulged generally with respect to rulings on a few objections *in this particular case*. The State urged that 1) it was prejudicial error to exclude comparable sales prices; 2) allowing mention of federal funds being involved in the condemnation; 3) in allowing testimony directly or by innuendo with respect to defendants' negotiations with an oil company, and that 4) the verdict was excessive.

As to 1): The assignment of error urged, in my opinion, may have pointed up error if a proper foundation had been laid, but it appears that such had not been done at the time objection was sustained. No proffer of proof thereafter was made, and it is understandable that such failure might reflect hesitancy of counsel to pursue such course because of futility, which appears to have been the case here. But under the circumstances it is conceivable that counsel may have believed and concluded that he would prefer to stand on the record as made in contemplation of testing the matter. To leave the matter thus, where there is a choice as to proffer of proof and no proffer is made, would seem to this writer to require the appellate court carefully to examine any claimed error presented for the first time on appeal. I think that in this case, under the circumstances here, any claimed error so urged for the first time was not prejudicial.

As to 2): I think that had a deliberate suggestion been made as to federal partici-

2. Weber Basin Water Conservancy District v. Ward, et al., 10 Utah 2d 29, on page 32, 347 P.2d 862.

pation in the project, with nothing else, there would have been prejudicial error.[1] But no one having objected to a view by the jury and not having requested that existing painted signs at the project clearly indicating federal participation, be covered or eliminated, no prejudicial error seems to have resulted here.

As to 3): The trial court refused to permit admission of a proposed lease to an oil company. Negotiations with the oil firm, however, were not stricken. Although we have held that such projected plans for expansion for a future higher and better use, are inadmissible, based not on true market value, but on conjecture,[2] this writer cannot see where the trial court, who prevented admission of any leasehold, prejudicially erred in permitting testimony about negotiations therefor. Lots of people negotiate for something, but fail to consummate a deal, and in this case, where the facts indicated no executed lease, mere negotiations that would tend to indicate a *possible*, but undetermined value, may well have been excluded by the trial court, but as to being *prejudicial* under the other facts *of this particular case*, seems to be an insufficient reason to upset the verdict.

As to 4): Damages: One says the property is worth $8,000. The other, $35,000. The jury, $20,000,—about half-way between. Doing so, it is no indictment of the jury system. But the pattern in condemnation proceedings in case after case in this court has shown that juries generally take appraisal extremes, add them up and cut the result in two to arrive at their verdicts. This is no more unusual than the disparity of the qualified appraisers' figures, almost invariably where three on one side set market value at, say $10,000, and three on the other side at $40,000, with a result that appears to be a confused, but compromise verdict of $25,000. The irreconcilability of such conclusions which strangely and frequently winds up with 3 consistent appraisals on one side, and 3 consistent appraisals on the other,—all of which results, in my opinion, in a consistent inconsistency.

It seems to me that a panel of expert appraisers might be suggested, from which a fixed number could be chosen by the judge, or by lot, that would insure divorcement of any love or affection for a particular litigant. At any rate the present pattern of wide divergence of opinions between appraisers presumably equally qualified, has produced a ridiculosity that merits correction.

1. Johnson v. South Carolina State Highway Dept., 236 S.C. 424, 114 S.E.2d 591 (1960); State By and Through Road Commission v. Salt Lake City Public Bd. of Ed., 13 Utah 2d 56, 368 P.2d 468 (1962).

2. State v. Tedesco, 4 Utah 2d 248, 291 P. 2d 1028 (1956).