452 P.2d 872

**STATE of Utah, By and Through its ROAD COMMISSION, Plaintiff and Appellant,**

**v.**

**Rulon S. WOOD and Zona S. Wood, his wife, Defendants and Respondents.**

**No. 11193.**

Supreme Court of Utah.

April 1, 1969.

---

6. Jury Instruction Forms Utah, Inst. No. 3.6 was given.

———◆———

Phil L. Hansen, Atty. Gen., Salt Lake City, Patrick H. Fenton, Special Asst. Atty. Gen., Cedar City, for plaintiff and appellant.

Christian Ronnow, Cedar City, of Mabey, Ronnow, Madsen & Marsden, Gordon A. Madsen, Salt Lake City, for defendants and respondents.

CROCKETT, Chief Justice:

The State Road Commission took from defendants by eminent domain proceedings an entire 7.23-acre piece of vacant land situated between 300 and 400 North and between 1200 and 1350 West in Cedar City, for construction of the new I-15 freeway. The jury placed the value at $24,582 and rendered a verdict for that amount.

The Commission appeals, contending that the trial court erred in admitting evidence concerning sales and values of certain properties not sufficiently similar to defendants' property to provide a proper basis for adjudicating its value.

In 1956 the defendants' tract of land had been made part of a proposed residential subdivision called Northwood. The development had not further materialized. In December of 1961, it had been rezoned light industrial. The evidence indicates, and the trial court accepted the view, that this was done in anticipation of the construction of a new Interstate I-15 freeway, and the prospect of its connecting with Highway U-56 leading west from Cedar City.

The foundational contention of the Road Commission is that inasmuch as the defendants' property was zoned industrial at the time of taking, it was improper to admit evidence concerning the sales and values of properties in the area having different actual and potential use and which were zoned residential.

The method of valuation of property taken by eminent domain has been a subject of much controversy and upon which there is considerable variation among the authorities. We are mindful of the rule which is most often credited with being the general rule: that any enhancement in value of the land taken which is brought

about by the proposed improvement itself is to be excluded in determining the damages for taking it. The respected authority on the subject, Nichols, states it thus: "The general rule is that any enhancement in value which is brought about in anticipation of and by reason of a proposed improvement is to be excluded in determining the market value of such land."[1] The main reason underlying that rule is that when a public institution embarks on the creation of a project which will benefit a given locality, the project should not be penalized, nor its creation made more burdensome, or perhaps prevented entirely, by having the fact that it is being created enhance the value of property necessary to acquire for the project. While as we explain below, the law of our state is different from the rule just recited, we nevertheless recognize that for the reason just stated caution should be exercised in evaluating such condemned property and that damages for its taking should not be increased or diminished solely because of the fact that that particular property is being taken for the public project. However, the texts referred to cite numerous cases for the other view: that the landowner is entitled to share in any general enhancement which affects the land in the area *up to the time of the taking*. The reasoning is that if the projected public improvement is something which is publicly known and sufficiently certain in prospect that it will increase the value of the property in the area, the condemnee whose property is taken should not alone be deprived of the benefit and in effect have to sacrifice part of the value of his property for the benefit of the adjoining owners and the public good. The latter view is in accord with our statute. Sec. 78–34–11 provides:

For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the service of summons, and *its actual value at that date* shall be the measure of compensation * * * [for property taken and for severance damages].

■ If the damages are to be appraised on the basis of the "actual value at that date," that is, the time of the service of summons, which is deemed to be the time the property is taken, consideration must be given to all factors bearing upon such value that a prudent and willing buyer and seller, with knowledge of the facts, would take into account, including any potential development which could with reasonable certainty be expected with respect to the property.[2]

---

1. See text statements and cases cited in Nichols on Eminent Domain, Vol. 4, Sec. 12.3151; and 27 Am.Jur.2d, Eminent Domain, Sec. 283; 29A C.J.S. Eminent Domain § 136(9); 147 A.L.R. 68 et seq.

2. See State By and Through Road Comm. v. Woolley et al., 15 Utah 2d 248, 390 P. 2d 860; and Weber Basin Water Conservancy District v. Ward, 10 Utah 2d 29, 347 P.2d 862 (1959); and State By

This court has but recently in the case of State By and Through Road Commission v. Jacobs, by Justice Callister, affirmed that the owner is entitled to the valuation of his property at the time it is taken on the basis of its highest and best use and that this is "without limitation as to the use then actually made of it." [3]

■ The argument of the Road Commission here, complaining of the evidence concerning other properties, seems to amount to a contention that they were improperly considered because they are not *identical* with the defendants' property. It must be realized that parcels of real estate cannot be absolutely alike in all respects. One basic and obvious difference is that they can have neither exactly the same location, nor exactly the same juxtaposition to other properties. Whether evidence of the value of other property should be admitted depends upon whether they are sufficiently similar in character, location, and other factors which would influence value, that they meet the test of "reasonable comparability" so they can reasonably be regarded as having probative value as to the worth of the property in question.[4] Because of the responsibility of the trial judge as the authority in charge of the trial, he is allowed considerable latitude in his judgment upon the matter; and his ruling should not be disturbed unless it appears he was clearly in error, and that this redounded to the prejudice of the complaining party.

■ A further important observation to be made relating to the evidence of such "comparables" is that whatever differences may exist with respect to the properties, and the effect they may have upon value, is something which can be explained to and considered by the jury. Undoubtedly the more alike the properties are, the more persuasive the evidence concerning the value of the comparable property would be; and conversely, the degree of difference would proportionately diminish its persuasiveness. It would therefore seem that when there is a substantial basis in the evidence for the trial court to believe that the test of "reasonable comparability" is met and he has admitted the evidence, the extent of such differences should be considered as going more to affect the weight of the evidence than its competency.[5]

. As is always done in such cases, both the points of similarity and of difference between the defendants' property and the properties used as comparables were explained to the jury so they could take them

and Through Road Comm. v. General Oil Co., 22 Utah 2d 60, 448 P.2d 718.

3. 16 Utah 2d 167, 397 P.2d 463.

4. State Engineering Comm. v. Peek et al., 1 Utah 2d 263, 265 P.2d 630.

5. See City and County of Honolulu v. Bishop Trust Co., 48 Haw. 444, 404 P.2d 373.

into account and make such allowance therefor as they deemed proper. E. g., the Commission's main complaint is about a "Gentry" property being used for residences. The expert pointed out the differences, including the fact that it was nearer the schools and was therefore worth $6000 per acre, whereas he valued the defendants' property at $4500 per acre. Other significant facts are that even though the defendants' property at the time of taking was zoned industrial, it had previously been zoned residential until the zoning was changed in anticipation of the construction of the freeway. Further it was shown that the other properties in the area were mostly residential; that sewage lines and utilities could readily be brought in; that it was located but a short distance from the high school and college; and that except for the taking, there would have been a reasonably certain prospect of getting it rezoned residential.[6]

When the rulings concerning the evidence of valuations are viewed in the light of what we have said above, and of the actual award of the jury of $3400 per acre for the defendants' property, we are not convinced either that the trial court abused his discretion in admitting evidence of the values placed on properties devoted to residential purposes as providing some assistance in judging the value of the defendants' property, or that the admission of such evidence deprived the Road Commission of a fair trial by prejudicing the jury against it. (All emphasis added.)

Affirmed. Costs to defendants (respondents).

CALLISTER, TUCKETT, HENRIOD and ELLETT, JJ., concur.

---

6. See State By and Through Road Comm. v. Woolley, footnote 2 above.