**REDEVELOPMENT AGENCY OF SALT LAKE CITY, Plaintiff and Appellant,**

v.

**MITSUI INVESTMENT INC., a corporation, Defendant and Respondent.**

No. 13270.

Supreme Court of Utah.

May 31, 1974.

------◆------

B. Lloyd Poelman, H. Reese Hansen, of Strong, Poelman & Fox, Salt Lake City, for plaintiff and appellant.

Robert S. Campbell, Jr., Robert D. Maack, of Pugsley, Hayes, Watkiss, Campbell & Cowley, Salt Lake City, for defendant and respondent.

CROCKETT, Justice:

Plaintiff Redevelopment Agency of Salt Lake City,[1] appeals from a jury verdict and judgment in favor of Mitsui Investment Inc., of $220,875 for some business property on the northeast corner of Second South and West Temple Street, taken by condemnation as part of an Urban Renewal Program. The agency assigns errors in rulings on evidence; and contends that there is insufficient competent evidence to support such an excessive verdict.

Pursuant to resolution, the Agency filed its complaint in February 1972 seeking condemnation of the property referred to, which consisted of two older buildings on 11,625 square feet of land.[2] Defendant

1. Sec. 11–19–3, U.C.A.1953 (as amended 1971), allows the legislative body of a community to designate itself as the Redevelopment Agency of that community. Here, the Salt Lake City Commission empowered two of its members to act as the Agency.

2. The Agency obtained the power of eminent domain under the Neighborhood Development Act, Sec. 11–19–23.9, U.C.A.1953 (as amended 1971), purposed to cooperate with and share in funding of the Federal Department of Housing and Urban Development.

Mitsui (a family corporation whose stock is held by Mr. and Mrs. Tsutomu Mitsui) answered challenging the plaintiff's authority to condemn and rejecting its offer of $156,165 as compensation. Thereafter the parties entered into a stipulation that the Agency could occupy the premises as of March 1, 1972, but that it would pay into court $117,123.75 (representing 75% of the value of the land as computed by the Agency) [3] and assist Mitsui in relocation as authorized by the Uniform Relocation Assistance and Real Property Policies Act of 1970.[4]

At the trial, in January 1973, eleven months after the taking, the only issue contested was that of value. As an adjunct thereto the parties orally stipulated that:

> [A]s of February, 1972, . . . the net rental income stream to this building, after taking into consideration . . . the gross rent from . . . all of the various aspects of the property . . . less the following: utilities, management . . . vacancy reserve and maintenance and upkeep expenses, would produce a net income to this property . . . between eight and eleven thousand dollars per year for two or three years after the date of condemnation.

The disparity between the valuation of the property by the witnesses is: The two experts for the Agency appraised the property at $156,125, and $156,165 respectively; and as the "Value contribution of buildings," each listed "None." Whereas, the two experts for Mitsui placed a total value of $242,784 and $246,764 respectively; and as to the "Value contribution of buildings," one listed $16,096.96 and the other $14,264.

The plaintiff makes the contention that the old buildings on the property were of no value whatsoever; and that they should not have been so included in Mitsui's appraisals. It made a proffer of proof that after taking possession, the buildings had been razed and the land converted to a parking lot, which resulted in a higher income than was being realized from the buildings. The court sustained the objection on the ground that these things which occurred after the taking were irrelevant as to the value on the date of the taking.

■ Pertinent to this problem is Section 78–34–11, U.C.A.1953:

> No improvements put upon the property subsequent to the date of service of summons shall be included in the assessment of compensation or damages.

The purpose of this is, of course, to forestall the possibility of making improvements on the property after notice of condemnation in order to enhance damages. The trial court's ruling was consistent with that purpose and with the general rule: That the value of condemned property is to be determined as of the date and under the circumstances existing at the time of the taking;[5] and that ordinarily evidence of subsequent occurrences is not admissible as bearing thereon.[6]

■ By way of confession and avoidance of the foregoing rule, the plaintiff Agency argues that the matter of subsequent use and income from the property was introduced into the case by the oral stipulation quoted above; and was also brought out in the testimony of Mitsui's own witnesses. Wherefore, it contends that it should have been permitted to introduce evidence on that matter. A pertinent observation to be made is: that the Agency having stipulated as to what the income would be for the next "two or three years after the date of condemnation," it should

---

3. Sec. 78–34–9, U.C.A.1953, provides . . . If the motion is granted, the court . . . shall . . . order . . . the plaintiff as a condition precedent to occupancy to file with the clerk of court . . . 75% of the condemning authority's appraised valuation . . . which on application of the parties in interest, . . . may be ordered paid over forthwith. See Jelco, Inc. v. Third Dis-

trict Court, et al., 29 Utah 2d 472, 511 P.2d 739.

4. 42 U.S.C. § 4601 et seq. (1972), Pub.L. 91–646 of Jan. 2, 1971, 84 Stat. 1894.

5. See, State By and Through Road Commission v. Valentine, 10 Utah 2d 132, 349 P.2d 321.

6. *Ibid.*

not feel too badly abused to let that be regarded as the fact, and not be heard to renege on its agreement. In regard to the subject being brought out in the testimony: it was first introduced by cross-examination of Mitsui's expert.

The Agency also complains of frailties in the testimony of Mitsui's experts because they admitted that in making their evaluations they did not take into account the fact that the buildings added no value to the property since it would produce a greater income by their removal, and converting it to a parking lot. It is intriguing if not outright anomalous to this writer that the Agency stresses the point that the parking lot produced more income than the buildings; and that it considered it discrediting of the evidence of defendant's experts that they had not considered that potential. It could be that there is some frailty in arriving at a valuation based partly on the existence of the buildings. But this seems to be a two-edged sword. If the Mitsui experts had considered the possibility that the buildings were valueless, and that the property would produce a higher income as a parking lot, this may have tended to result in a higher evaluation, offsetting the value placed thereon by reason of the buildings.

It is true that the appraiser should take into account all facts and circumstances relating to the property which he thinks has a bearing on value; and that this may include any potential use or development which is to be expected with reasonable certainty.[7] But the work of an appraiser, though it can be in a sense factual and scientific in some of its aspects, is also an art, in that it reflects the creative talents, the experience, the integrity, and in sum, the personalized judgment of the individual appraiser. It is his prerogative to select and analyze the various factors which seem important to him in arriving at his estimate as to value. Therefore no one should be able to put him in a straightjacket as to his method; much less should they compel him to speculate as to what may happen in the future with respect to the property. If he fails to give proper consideration or weight to any particular factor that goes to the credibility and not to the admissibility of his evidence. If it has deficiencies, they are subject to exposure on cross-examination[8] and the weight to be given it is for the jury.[9]

In its effort to discredit the defendant's evaluation and the jury verdict based thereon as excessive, the Agency also criticizes the admission of testimony of Mitsui's experts concerning other sales of property in the area. It avers they are not comparable for various reasons, the detail of which can be spared here. Concerning this contention we make these observations: On the question of evaluation of property, as in most areas of the law, a resort to common sense and practical experience if helpful. Real estate has always been regarded as unique because no two parcels can be exactly alike. It is certainly not to be supposed that there will be found sales which are identical as to time, location, quantity and various characteristics of the property. The requirement is that it meet the test of "reasonable comparability." That is, that these factors exist in sufficient similarity that the sale can fairly be regarded as having some probative value in arriving at a proper appraisal of the property. Whether the other sale meets that test is for the trial court to determine; and he is allowed considerable latitude of discretion; and his ruling will not be disturbed on appeal unless it appears clearly that he was in error.[10]

7. State By and Through Road Commission v. Woolley, 15 Utah 2d 248, 390 P.2d 860 (1964).

8. Weber Basin Water Cons. Dist. v. Ward, 10 Utah 2d 29, 347 P.2d 862.

9. Weber Basin Water Cons. Dist. v. Skeen, 8 Utah 2d 79, 328 P.2d 730.

10. State By and Through Road Comm. v. Wood, 22 Utah 2d 317, 452 P.2d 872; Salt Lake County v. Kazura, 22 Utah 2d 313, 452 P.2d 869 (1969); 5 Nichols, Eminent Domain § 21.31.

 This case falls within the framework of the fundamental principle: that what the parties are entitled to is a fair opportunity to present their respective cases to a court and jury for determination. When this has been accomplished, all presumptions favor the verity of the verdict and the judgment; and this includes all aspects of the conduct of the proceedings, and rulings of the court.[11] The burden is upon the appellant (plaintiff Agency) to show not only that there was error, but that it was substantial and prejudicial in that he was in some manner deprived of such full and fair presentation and consideration of the disputed issues.[12] We find no such error here.

Affirmed. Costs to defendant (respondent).

CALLISTER, C. J., and HENRIOD, ELLETT and TUCKETT, JJ., concur.

11. As to rulings on evidence see Rule 4, Rules of Evidence for Utah; as to instructions to jury see Hillyard v. Utah By-Products Co., 1 Utah 2d 143, 263 P.2d 287 (1953).

12. See Rule 61, U.R.C.P.; Eager v. Willis, 17 Utah 2d 314, 410 P.2d 1003.