**REDEVELOPMENT AGENCY OF SALT LAKE CITY, Plaintiff and Respondent,**

v.

**Oscar V. GRUTTER and Delia E. Grutter, his wife, Defendants.**

No. 18879.

Supreme Court of Utah.

Nov. 26, 1986.

William D. Oswald, Harold A. Hintze, Salt Lake City, for respondent.

Mark S. Miner, Kerry P. Egan, Salt Lake City, for appellant.

DURHAM, Justice:

This is an appeal in a condemnation proceeding brought by the plaintiff, Redevelopment Agency of Salt Lake City, involving property owned by defendants, Oscar and Delia Grutter. The property was condemned pursuant to the Jackson Redevelopment Plan. The only issue before the court below was the fair market value of the property. Defendants appeal the amount of the jury award, claiming the trial court erred in refusing to allow evidence concerning the effect of the Jackson Neighborhood Development Plan on the value of the property, thereby denying the defendants the ability to show the highest and best use to which the property could be put at the time of the taking and the opportunity to prove that such use was reasonably probable in the near future. For the reasons discussed below, we affirm.

The parties stipulated before trial that plaintiff had the right to condemn defendants' land, consisting of approximately two-thirds of an acre in Salt Lake City. At the time of condemnation, March 2, 1981, defendants' property was zoned R–6. Multiple unit housing is allowed on property zoned R–6, subject to certain restrictions relating to parking and access to the property. Defendants sought to introduce evidence at trial regarding the number of units to be placed on defendants' property as a factor to be considered in determining its value for compensation purposes. The trial court allowed the testimony of defendants' expert that R–6 zoning allowed up to twenty-five units on defendants' property. However, the trial court refused to allow evidence regarding the Jackson Neighborhood Development Plan. The Jackson Plan, which was approved and adopted by ordinance of the Salt Lake City Commission on August 26, 1980, is a master plan for the renovation of the neighborhood in which defendants' property is located. It would allow up to eighty units per acre in that neighborhood, including defendants' property. The sole issue on appeal is whether the trial court erred in not permitting defendants to introduce evidence about the Jackson Neighborhood Development Plan.

It appears from the record that defendants failed to establish a proper foundation for the introduction of the excluded evidence, or to adequately preserve the issue for appeal. Our research, however, has revealed such confusion in the law on the substantive issue argued in this case that we have determined to treat it on the merits.

U.C.A., 1953, § 57–12–13, a statute not cited by either of the parties, states:

Any agency acquiring real property as to which it has the power to acquire under the eminent domain or condemnation laws of this state shall comply with the following policies:

....

(3) .... Any decrease or increase of the fair market value of real property prior to the date of valuation caused by the public improvement for which such property is acquired or by the likelihood that the property would be acquired for such improvement, ... will be disregarded in determining the compensation for the property.

While this statute applies only to "agencies," and not to the courts, it does express a clear legislative policy to the effect that any change in the value of the property due to the project for which the property is being condemned is to be disregarded in assessing the property. This statute was passed in 1972.

This Court first mentioned the enhancement issue in dicta in *Weber Basin Water Conservancy District v. Ward,* 10 Utah 2d 29, 347 P.2d 862 (1959). Although the *Ward* case was decided on grounds other than the method of evaluation used, the valuation issue was discussed in order to instruct the trial judge about how to treat the case on remand. In *Ward,* we rejected the majority view and allowed the property owner to be compensated for the increased value of his land caused by the announcement of the project for which the property was being condemned. We did not specify what was to be done about decreases in value.

We later cited *Ward* in *State v. Woolley,* 15 Utah 2d 248, 390 P.2d 860 (1964), a case in which we reviewed a condemnation of land for the construction of a highway. In *Woolley,* the landowner introduced evidence that the condemned land had special value because it was near the Utah-Wyoming border and well suited for a service station. We affirmed the trial court's determination that such evidence of special value was admissible. Although *Woolley* was not a case dealing with enhancement,

we cited the enhancement language from *Ward* with approval.

We next considered the issue in *State Road Commission v. General Oil Co.,* 22 Utah 2d 60, 448 P.2d 718 (1968). In that case, we inaccurately referred to the *Ward* enhancement language as the "holding" of that case. In *General Oil,* the state condemned land for I-15. The trial court allowed evidence of sales of similar properties, whose values had been enhanced by the proposed freeway construction, to be admitted into evidence over the State's objection. We subsequently upheld the trial court, relying on the "holding" in *Ward.* 22 Utah 2d at 62–63, 448 P.2d at 798. Thus, nine years after we wrote the dicta relating to enhancement in *Ward,* we relied upon that dicta as *stare decisis* in *General Oil.*

This line of cases was again cited in *State Road Commission v. Wood,* 22 Utah 2d 317, 452 P.2d 872 (1969). *Wood* raised the question of what standards must be met for properties to be similar enough to the condemned property for use as "comparables" in the appraisal process; the enhancement question was presented because the property owner introduced evidence at trial of sales of comparable property zoned residential, although his own property had been rezoned as industrial in anticipation of the condemnation for highway use. This Court affirmed the trial court's evidentiary ruling, even though it had the effect of preventing a consideration of a decrease in the value of the property because of the proposed condemnation. Inexplicably in that context, *Wood* restated the "Utah rule" on enhancement, citing to *Woolley, Ward,* and *General Oil* as the foundation for the rule. 22 Utah 2d at 319, 452 P.2d at 873. The dicta in *Wood* was subsequently cited by Professor Nichols. 4 J. Sackman, *Nichols on Eminent Domain* § 12.-3151 n. 1 (3rd ed. 1985).

Our review of Utah case law convinces us that this Court has never squarely faced the enhancement issue in a case in which it

was relevant to the holding.[1] In addition to having dubious antecedents, the Utah "rule" now expressly conflicts with legislative intent and is contrary to the rule applied by a majority of other jurisdictions. Therefore, we deem it appropriate to enunciate a new rule on the valuation question.

We hold that in condemnation proceedings any enhancement or decrease in value attributable to the purpose for which the property is being condemned shall be excluded in determining the fair market value of the property. This rule conforms to legislative intent and to sound policy.

Affirmed.

HALL, C.J., and STEWART, HOWE, and ZIMMERMAN, JJ., concur.

---

**1.** The issue was squarely presented in *General Oil,* but we relied on the dicta in *Wood* rather than analyzing the issue.