**BOARD OF COUNTY COMMISSION-
ERS OF TOOELE COUNTY,
Plaintiff and Appellant,**

v.

**Joseph Wiley FERREBEE, Trustee of
the Ferrebee 1976 Family Trust,
Defendant and Appellee.**

**BOARD OF COUNTY COMMISSION-
ERS OF TOOELE COUNTY,
Plaintiff and Appellee,**

v.

**Joseph Wiley FERREBEE, Trustee of
the Ferrebee 1976 Family Trust,
Defendant and Appellant.**

Nos. 900373, 900398.

Supreme Court of Utah.

Dec. 11, 1992.

David B. Thomas, Salt Lake City, for Board of County Com'rs.

Evan A. Schmutz, Salt Lake City, for Ferrebee.

DURHAM, Justice:

The Board of County Commissioners of Tooele County ("the County") appeals from an order awarding $74,000 to Joseph Ferrebee in an action to condemn 43.66 acres of his property for use in conjunction with the Tooele County Airport. Ferrebee cross-appeals, challenging the amount of the award and the trial court's refusal to award attorney and appraisal fees.[1] We affirm in part and reverse in part.

In this appeal, we consider whether the trial court properly included an enhancement in value based on proximity to the airport and properly refused to award attorney and appraisal fees. These issues involve questions of law, which we review for correctness. *Avila v. Winn*, 794 P.2d 20, 22 (Utah 1990).

In the 1970s, Tooele County developed a plan to build a county airport. The original airport layout plan designated 68 acres of Ferrebee's 80–acre parcel for acquisition.[2] The County acquired 37 acres in a condemnation action commenced in 1975. Shortly after the action concluded in 1979, the County contacted Ferrebee about acquiring the remaining acreage. Ferrebee declined to sell the property but indicated an interest in donating it to the County. Negotiations concerning the appropriate value ensued, leading the County to obtain an appraisal from Jerry Webber. In 1981, Webber submitted his appraisal, valuing the land at $1,750 per acre. Ferrebee rejected the appraisal, and another was subsequently prepared by William Alsop. Ferrebee decided against donating the property.

1. The parties originally filed two separate appeals. However, prior to briefing, the appeals were consolidated. Accordingly, we dispose of both matters in this opinion.

2. The remaining 12 acres were considered to be an uneconomic remainder that the County also had to acquire.

Because of budgetary constraints, the County did not acquire the remaining 43 acres immediately after the first action. In September 1983, the County applied for a federal grant and subsequently ordered a current appraisal as required by FAA regulations. The appraisal, submitted by Webber in 1985, valued the property at $275 per acre. A review appraisal prepared by George Fujii criticized Webber's valuation, although Fujii subsequently submitted his own appraisal of $240 per acre. The appraisers attributed the reduction in valuation to a significant drop in property values in Tooele County, among other things.

In 1986, the County offered to purchase the property for $275 per acre. Ferrebee refused, prompting the County to increase its offer by $200 per acre as an incentive to avoid litigation. Despite this increase, Ferrebee again refused, and the County filed a second condemnation action in May 1986 to obtain the remaining 43 acres. Ferrebee commissioned three appraisals which assessed the final value at $1,695 per acre, $1,946 per acre, and $2,306 per acre. At trial, the court accepted the $1,695 appraisal (the "Cook appraisal") as the best estimate of fair market value. The Cook appraisal assigned a base value of $1,500 per acre for 30 acres and $500 per acre for the remaining acres, for a total of approximately $52,000.

The Cook appraisal then deducted $19,500 as the cost of obtaining access to the 43.66 acres rendered landlocked by the prior condemnation action, but the trial court deducted only $19,240 based upon a written option agreement between Ferrebee and a neighbor for a right-of-way at a cost of $5,000 per acre. After deducting the cost of access, the trial court added a bonus of 125 percent, or $40,950, as an enhancement due to proximity to the airport. Ferrebee was awarded $74,000 as the total fair market value, including the enhancement and the deduction for access, plus costs, interest, and a refund of taxes paid on the property. The trial court denied his claims for attorney fees and appraisal costs, based on its ruling that the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601 to 4655, and the Utah Relocation Assistance Act, Utah Code Ann. §§ 57–12–1 to –13, did not apply.

On appeal, the County asserts that the trial court erred in accepting the Cook appraisal because it included an enhancement. Ferrebee maintains that the Cook appraisal and enhancement were proper and claims on cross-appeal that the trial court improperly discounted the value of his land because it is landlocked and incorrectly based the amount of the deduction on an unexercised option agreement. Furthermore, Ferrebee contends that he is entitled to attorney fees and appraisal costs, relying in part on state and federal relocation assistance acts which the trial court found inapplicable to this case.

We conclude that the trial court erred in awarding an enhancement of 125 percent based upon proximity to the airport. However, we affirm the trial court's reliance upon the remaining portions of the Cook appraisal, including the $19,240 deduction for access. We also hold that Ferrebee is not entitled to appraisal costs or attorney fees.

## ENHANCEMENT FOR AIRPORT PROXIMITY

The County challenges the trial court's finding that the Cook appraisal represented the best estimate of the property's fair market value. We will reverse that factual determination only if we find it to be clearly erroneous. *Grayson Roper Ltd. v. Finlinson*, 782 P.2d 467, 470 (Utah 1989). Under that standard, we do not find the trial court's acceptance of the Cook valuation, setting a base property value at $52,000, to be clearly erroneous.

■ However, the Cook appraisal includes an airport enhancement that requires a proper legal basis. In other words, Cook added a premium of 125 percent, or $40,950, which he considered a reasonable estimate of the increase in property value attributable to the nearby airport. The trial court's use of the enhancement factor raises an issue of law; accordingly, we review that portion of the appraisal for correctness, giving no particular

deference to the trial court. *Avila*, 794 P.2d at 22.

This court has held that any increase or decrease in property value due to the project for which property is being condemned shall not be considered in assessing fair market value. *Redevelopment Agency v. Grutter*, 734 P.2d 434 (Utah 1986). We noted in *Grutter* that this rule comports with legislative intent and brings Utah in line with other jurisdictions. *Id.* at 437.

The relevant inquiry, then, is whether the 43.66 acres at issue in this proceeding are part of the same project as the 37 acres condemned in the 1975 action. If so, then *Grutter* precludes consideration of any enhanced value resulting from the proximity of the airport. However, if the land currently at issue was not within the original scope of the project but is merely adjacent property, then an enhancement would be appropriate. *United States v. Miller*, 317 U.S. 369, 376–77, 63 S.Ct. 276, 281, 87 L.Ed. 336 (1943). The "scope of the project" test requires only a showing that "during the course of the planning or original construction it became evident that land so situated would probably be needed for the public use." *United States v. Reynolds*, 397 U.S. 14, 21, 90 S.Ct. 803, 807–08, 25 L.Ed.2d 12 (1970). *Reynolds* does not require that the property be specifically identified in the original plans, as it was in this case. *Id.*

Ferrebee argues that *Grutter* is inapplicable to the instant proceeding and that *Miller* mandates an enhancement award. Specifically, he contends that because the County did not initiate the second condemnation action until 1986, eleven years after the first proceeding commenced, the County therefore engaged in two separate projects, with the subject property being needed for the second project. Therefore, the argument continues, any increase in value would be attributable to the completion of the first project and the intervening years, rather than to the current airport project. If we accept that reasoning, then an enhancement would be appropriate.

We are not persuaded, however, that an enhancement is warranted in this case. The trial court found that the original air-port layout plan included 68 acres of Ferrebee's property and that two separate condemnation actions occurred. Although the record supports these factual findings, they do not decide the "scope of the project" question. We therefore undertake a closer review of the record.

As previously mentioned, the trial court found that as of the early 1970s, the County intended to acquire 68 acres of Ferrebee's property to build the Tooele County Airport. The County has alleged that it obtained only 37 acres in the 1975 condemnation action due to fiscal restraints. Nothing in the record refutes that assertion. The first condemnation proceeding continued until 1979, and at its conclusion, the County immediately approached Ferrebee about acquiring the remaining acreage. Negotiations concerning Ferrebee's offer to donate the property to the County for a charitable tax deduction occurred in 1981, at which time several appraisals were prepared. Ferrebee testified that in June 1982 and again in October 1982, he received letters from the County indicating a continuing interest in the property. In addition, the County Director of Development Services testified that he offered Ferrebee $1,750 an acre minus the severance award from the prior proceeding, but Ferrebee refused his offer. Two years later, in December 1984, Ferrebee's attorney received a letter reiterating the County's intent to acquire his property. Finally, the County made several offers in early 1986 predating the filing of the condemnation action.

The foregoing history compels the conclusion that the County has engaged in one continuous project. While the County deserves no praise for speed, we cannot say that its actions constitute two separate projects, especially when it consistently and openly contemplated acquiring all of Ferrebee's property.

Ferrebee argues that the County is seeking his property to expand airport operations and thus that the property is beyond the scope of the original project. He bases his argument on speculation about the airport's possible role as a "reliever" airport for Salt Lake International Airport, despite

his own expert's admission that current demand would not justify such expansion. However, the evidence presented at trial indicates that the County intends to expand only the boundaries of the facility, which does not necessarily mean that an increase in operations is planned.

Ferrebee's arguments about future airport expansion are ultimately irrelevant to the matter of scope. What *Miller* and *Reynolds* require is that the *land* be within the scope of the original project; nowhere do they mandate that the *use* of that land be within the original plan. 317 U.S. at 376–77, 63 S.Ct. at 281; 397 U.S. at 19, 90 S.Ct. at 807. Consequently, we would consider this a second project only if the County were pursuing land not previously considered for the airport.

From this evidence, we can only conclude that the present condemnation action arises from the County's original intent to acquire Ferrebee's property for airport development; in other words, the subject property was always within the scope of the project, although it was condemned in two separate legal actions. Indeed, the United States Supreme Court in *Miller* contemplated the very scenario presented by this case, noting:

> If, however, the public project from the beginning included the taking of certain tracts but only one of them is taken in the first instance, the owner of the other tracts should not be allowed an increased value for his lands which are ultimately to be taken any more than the owner of the tract first condemned is entitled to be allowed an increased market value because adjacent lands not immediately taken increased in value due to the projected improvement.

317 U.S. at 376–77, 63 S.Ct. at 281. Thus, the *Miller* Court recognized that not all property contemplated for a particular project necessarily would be acquired at the same time. Delay alone cannot erase the prohibition on enhancing property values attributable to a project. The Tenth Circuit echoed this sentiment, recognizing that government projects require time, flexibility, and modification and admonishing

courts to be reasonable in their expectations about the timing and specifications of land acquisition. *United States v. 49.01 Acres of Land,* 669 F.2d 1364 (10th Cir. 1982); *see also United States v. 65.0 Acres of Land,* 728 F.2d 417 (10th Cir.1984).

We hold that the enhancement contained in the Cook appraisal is not warranted as a matter of law and must be eliminated from the award. We affirm the remaining portions of the trial court's award, including the deduction for the cost of access.

## APPRAISAL AND ATTORNEY FEES

■■■ In his cross-appeal, Ferrebee maintains that he is entitled to an award of appraisal and attorney fees. We find no basis in the law to support this contention. His reliance upon the Uniform Federal Relocation Act and the Utah Relocation Assistance Act is misplaced because those acts protect only landowners who are physically displaced in some fashion by condemnation. 42 U.S.C. § 4651; Utah Code Ann. § 57–12–2. Ferrebee does not fall within the parameters of either act because neither his home nor his business was relocated due to the proceedings, nor did he suffer any type of displacement resulting in economic harm. Furthermore, the policies outlined in subchapter III of the Uniform Act apply only to federal agencies and programs, 42 U.S.C. § 4651, and not to a board of county commissioners. Accordingly, Ferrebee is not entitled to appraisal or attorney fees under either statute.

Ferrebee also asserts that attorney fees are appropriate due to the County's alleged bad faith under Utah Code Ann. § 78–27–56. However, the trial court concluded that the County's actions were not sufficiently serious to constitute bad faith, and this conclusion is not clearly erroneous. In addition, Ferrebee failed to demonstrate that the County's action was without merit, as required by the statute. We therefore hold that Ferrebee is not entitled to attorney fees in the present action.

This court has not yet considered the issue of awarding appraisal fees in condemnation actions. Because appraisal fees are similar to expert witness fees and other

litigation expenses incurred in a condemnation action, we look to cases considering awards of those costs. The Utah Court of Appeals considered awarding expert witness fees and other trial preparation expenses under the Utah Neighborhood Development Act, Utah Code Ann. § 11-19-23.9, in *Redevelopment Agency v. Daskalas,* 785 P.2d 1112 (Utah Ct.App.1989). The court of appeals analyzed the statutory provision permitting a trial judge to award costs to a landowner and concluded that expert witness fees are not reimbursable costs absent an express mandate from the legislature. We granted certiorari to review that decision, 795 P.2d 1138 (Utah 1990), but the parties subsequently agreed to dismiss the appeal.

■ While the Neighborhood Development Act at issue in *Daskalas* does not apply to the current condemnation action, the reasoning of the court of appeals is useful in deciding whether to award appraisal fees under the eminent domain statute, Utah Code Ann. §§ 78-34-1 to -20. Sections 78-34-16 and 78-34-19 expressly provide for full reimbursement of reasonable and necessary expenses incurred by a condemnee in two situations: agency abandonment of the condemnation action and agency failure to commence or complete construction within a reasonable time. By explicitly providing for costs in two situations and by broadly defining costs in those contexts, the legislature has limited the sphere in which costs are appropriate. *Cf. Daskalas,* 785 P.2d at 1124.

■ The reasoning of the court of appeals in *Daskalas* is persuasive. However, we are sympathetic to the policy considerations Ferrebee has raised in his brief. He asserts that private citizens are often in disadvantageous positions relative to the condemning authority. As a result, the argument continues, landowners often spend substantial amounts of money to refute a government appraisal and should be compensated accordingly should their appraisals prevail at trial. Because we believe that this argument deserves thorough consideration, we examine the laws of other states to determine how it has fared.

Some state statutes expressly give trial courts discretion to award expert witness fees in eminent domain actions. *See Denver v. Board of County Comm'rs,* 105 Colo. 366, 98 P.2d 283 (1940); *Commissioner of Conservation v. Connor,* 321 Mich. 648, 32 N.W.2d 907 (1948). Those states with statutes providing generally for costs or expenses in condemnation actions are divided on the issue of whether the general provision includes expert witness fees. For example, California, Missouri, and Nevada exclude such awards from general cost provisions. *Los Angeles v. Vickers,* 81 Cal.App. 737, 254 P. 687 (1927); *St. Louis v. Meintz,* 107 Mo. 611, 18 S.W. 30 (1891); *Andrews v. Kingsbury Gen. Improvement Dist. No. 2,* 84 Nev. 88, 436 P.2d 813 (1968).

The prevailing practice in other jurisdictions is to allow expert witness fees only where a statute explicitly provides for such an award or expressly leaves it to the trial court's discretion. The Utah eminent domain statute allows for reimbursement of a condemnee's expenses in only two situations, neither of which is present here. Utah Code Ann. §§ 78-34-16, -19. We are persuaded that the scope of statutory entitlement is appropriate and will not award expert fees absent a statutory grant.

■ Because no statutory basis exists to support an award of appraisal fees, we next consider whether constitutional concerns warrant inclusion of such an award as "just compensation" within the meaning of article I, section 22 of the Utah Constitution or the Fifth Amendment of the United States Constitution. This court has never considered awarding expert witness fees under the Utah Constitution. The court of appeals in *Daskalas* noted that just compensation under the federal Constitution "is for the property and not to the owner." 785 P.2d at 1123 (citations omitted). Similarly, the United States Supreme Court has held that a property owner is not entitled to reimbursement for appraisals under the Fifth Amendment's just compensation provision. *United States v. Bodcaw Co.,* 440 U.S. 202, 99 S.Ct. 1066, 59 L.Ed.2d 257

(1979). We believe that the same logic applies under the Utah Constitution.

Other states have agreed with the United States Supreme Court in cases preceding and following the *Bodcaw* decision, holding that the just compensation clauses of their state constitutions do not require an award of expert witness fees in condemnation proceedings. *See Mastick v. State*, 118 Ariz. 366, 576 P.2d 1366 (1978); *County of Los Angeles v. Ortiz*, 6 Cal.3d 141, 98 Cal.Rptr. 454, 459, 490 P.2d 1142, 1147 (1971); *9.88 Acres of Land v. State ex rel. Highway Dep't*, 274 A.2d 139, 140–41 (Del.1971); *State v. Davis*, 53 Haw. 582, 499 P.2d 663, 667 (1972); *Ada County Highway Dist. v. Acarrequi*, 105 Idaho 873, 673 P.2d 1067 (1983); *Department of Transp. v. Winston Container*, 45 N.C.App. 638, 263 S.E.2d 830 (1980); *North Am. Realty Co. v. Milwaukee*, 189 Wis. 585, 208 N.W. 489 (1926). However, Florida reached the opposite result in *Dade County v. Brigham*, 47 So.2d 602 (Fla.1950), holding that the just compensation clause of the Florida constitution mandated an award of appraisal and expert witness fees. Colorado reached the same conclusion in *Denver Joint Stock Land Bank v. Board of County Commissioners*, 105 Colo. 366, 98 P.2d 283 (1940). In *Daskalas*, the Utah Court of Appeals rejected the logic of the Florida court, noting that just compensation under the federal Constitution is less inclusive than the Florida court suggested. 785 P.2d at 1123. We agree.

We are persuaded by the United States Supreme Court's opinion in *Bodcaw* holding that while compensating a landowner for costs incurred in defending a condemnation action may be fair or efficient, such compensation "is a matter of legislative grace rather than constitutional command." 440 U.S. at 204, 99 S.Ct. at 1067. Since the Utah legislature has defined those situations in which compensation is appropriate and has not deemed the present one to be among them, we hold that an award of appraisal fees is not warranted under the statutes or constitution of the state.

## COST OF ACCESS AND ADMISSIBILITY OF OPTION

In his cross-appeal, Ferrebee also contends that the trial court improperly deducted the cost of obtaining access to the land and incorrectly based the deduction upon an option agreement between Ferrebee and his neighbor. We find his arguments unpersuasive.

■ Ferrebee asserts that options may not be considered in determining fair market value. We do not reach that issue, however, because he has waived it by failing to object to the introduction of the option at trial and by neglecting to raise the issue of inadmissibility of the option when the trial court made its findings of fact and conclusions of law. Utah R.Evid. 103(a)(1). Furthermore, Ferrebee's own appraiser deducted virtually the same amount based upon other comparisons independent of the option. Consequently, we affirm the trial court's deduction of $19,240 and dismiss this portion of the cross-appeal.

## EVIDENTIARY ISSUES

The County also challenges the Cook appraisal on a variety of evidentiary bases. We have reviewed those arguments and consider them to be without merit.

We therefore affirm the trial court, except with respect to the enhancement award, which we reverse, and deny the cross-appeal for the reasons explained above.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.